No. 57,812

STAR LUMBER & SUPPLY CO., INC., *Appellant*, v. CAPITAL CONSTRUC-TION COMPANY, INC.; CLARK A. OREBAUGH and SALLY L. OREBAUGH, Husband and Wife; JOHN D. MORRISON and SHELLEE K. MORRISON, Husband and Wife; JOHN A. SMITH; CHARLES B. SMITH and SANDRA KAY SMITH, Husband and Wife; and GEOFFREY B. PAYNE and CINDY L. PAYNE, Husband and Wife, *Defendants, Third-Party Plaintiffs and Appellees*, and FIDELITY SAVINGS ASSOCIATION OF KANSAS; CONTINENTAL ILLINOIS BANK AND TRUST OF CHICAGO; and COLUMBIAN NATIONAL TITLE INSURANCE COMPANY, *Defendants, Third-Party Defendants and Appellees*.

(715 P.2d 11)

Opinion filed February 21, 1986.

*Orlin L. Wagner*, of Wichita, argued the cause and was on the brief for appellant.

*Ronald D. Heck*, of Fisher, Heck and Wright, P.A., of Topeka, argued the cause, and *Ann L. Hoover*, of the same firm, was on the brief for appellees Clark A. and Sally L. Orebaugh, John D. and Shellee K. Morrison, Geoffrey B. and Cindy L. Payne, and Columbian National Title Insurance Company of Wichita, Inc.

The opinion of the court was delivered by

MILLER, J.: This is a consolidated action to foreclose me-

chanics' liens filed by the plaintiff, Star Lumber and Supply Company, Inc. After trial, judgment was entered against Star and foreclosure of its liens was denied. Star appeals, challenging the findings of the trial court and the reasons for its decision.

The parties are Star Lumber, the plaintiff and lien claimant; the individual homeowners, whom we will presently identify in connection with each lien; Capital Construction Company, Inc., which built the homes and which formerly held legal title to the various tracts of land; the mortgagees; and a title insurance company. Capital filed for bankruptcy shortly after this action was commenced; Capital is not represented on appeal. Fidelity Savings Association of Kansas and Continental Illinois Bank and Trust of Chicago are the mortgagees on various properties, and Columbian National Title and Insurance Company insured the titles. The position taken by these companies parallels that of the homeowners.

The facts are not in dispute. In August 1981, Capital was the record owner of two separate tracts of land. It entered into a contract with Geoffrey B. Payne and Cindy L. Payne to construct a home on one parcel. It entered into a separate contract with Clark A. Orebaugh and Sally L. Orebaugh to construct a home on another tract. Similarly, in September 1981, it entered into a contract with John E. Morrison and Shellee K. Morrison to build a home on a tract of land then owned by Shade Development Company. The date on which Shade conveyed the land to Capital is not reflected, but apparently that conveyance followed shortly after the execution of the contract. In early October 1981, Capital, the record owner of a fourth tract, entered into a contract with John A. Smith, Charles B. Smith and Sandra K. Smith to construct a home on that tract. None of the contracts were recorded. Capital contracted with Star Lumber for materials and in the winter of 1981-1982, Star delivered various items of lumber and materials to the four separate tracts. As construction progressed, the Paynes, the Orebaughs and the Morrisons, on separate occasions, visited the showrooms of Star and selected various components for their respective homes. All of the items furnished by Star were charged to Capital, and the records indicate to which of the four sites the items belong. Some items were picked up at Star's place of business, but most were delivered by Star to the building sites.

On February 16, 1982, the deed from Capital to the Paynes was recorded. Similarly, a deed from Capital to the Orebaughs was recorded on February 9, 1982; a deed to the Morrisons was recorded on March 2, 1982, and a deed to the Smiths was recorded on April 5, 1982. After the Payne, Orebaugh and Morrison deeds were recorded, Star continued to furnish material to the respective jobs. The last material was furnished to each of those three jobs on March 9, 1982. The last material for the Smith home was furnished on April 1, 1982, four days before the Smith deed was recorded. Capital did not pay Star, and Star filed a separate mechanic's lien against each property on April 23, 1982.

Star's lien statements against each property were similar. Each named Capital Construction Company, Inc., as the owner of the property and Star as the contractor and claimant; none of the lien statements named the then record title owners of the respective properties—the Paynes, the Orebaughs, the Morrisons or the Smiths. Each lien statement had appended to it a copy of a large number of invoices, each showing the items furnished to that particular tract, plus an adding machine tape of the total invoice charges, credits and balances due. The plaintiff brought four separate lawsuits to foreclose its liens. It joined as defendants various other lien claimants, but their claims have been disposed of and are not pertinent to this appeal. The homeowners, the lending agencies, and the title insurance company answered and the cases were tried to the court on October 24 and 25, 1983.

On November 4, 1983, the trial court filed its order, denying relief to Star and granting judgment to the homeowners. It is from this order that Star appeals. The trial judge held that Star's liens were invalid when filed. He held that the Paynes, Orebaughs, Morrisons and Smiths were the owners of the respective properties; that Capital was the contractor; and that Star was a subcontractor. He concluded that Star was required to file its lien as a subcontractor, pursuant to K.S.A. 60-1103.

He further found that the lien statements were not verified when filed and were thus invalid for that reason. Additionally, he found that there was no valid evidence that the materials listed in the lien statements were delivered to any of the four job sites. Finally, he found that the lien statements were invalid since the officer signing them had no personal knowledge of the truth or correctness of the statements or their attachments, and he con-

cluded that a lien statement signed only on information and belief is insufficient.

The statutes with which we are concerned are K.S.A. 60-1101, -1102 and -1103. These statutes read:

"**60-1101. Liens of contractors; priority.** Any person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property, under a contract with the owner or with the trustee, agent or spouse of the owner, shall have a lien upon the property for the labor, equipment, material or supplies furnished, and for the cost of transporting the same. The lien shall be preferred to all other liens or encumbrances which are subsequent to the commencement of the furnishing of such labor, equipment, material or supplies at the site of the property subject to the lien. When two or more such contracts are entered into applicable to the same improvement, the liens of all claimants shall be similarly preferred to the date of the earliest unsatisfied lien of any of them."

"**60-1102. Filing and recording of lien statement.** (a) *Filing.* Any person claiming a lien on real property, under the provisions of K.S.A. 60-1101, shall file with the clerk of the district court of the county in which property is located, within four (4) months after the date material, equipment or supplies, used or consumed was last furnished or last labor performed under the contract a verified statement showing:

"(1) The name of the owner,

"(2) the name of the claimant,

"(3) a description of the real property,

"(4) a reasonably itemized statement and the amount of the claim, but if the amount of the claim is evidenced by a written instrument, or if a promissory note has been given for the same, a copy thereof may be attached to the claim in lieu of the itemized statement.

"(b) *Recording.* Immediately upon the receipt of such statement the clerk of the court shall enter a record in a book kept for that purpose, to be called the mechanic's lien docket, which docket shall be ruled off into separate columns, with the headings as follows: 'When filed,' 'Name of owner,' 'Name of claimant,' 'Amount claimed,' 'Description of property,' and 'Remarks'; and the clerk shall make the proper entry in each column."

"**60-1103. Liens of subcontractors; limitations with respect to residential property.** (a) *Procedure.* Any supplier, subcontractor or other person furnishing labor, equipment, material or supplies, used or consumed at the site of the property subject to the lien, under an agreement with the contractor, or a subcontractor of the contractor, may obtain a lien for the amount due in the same manner and to the same extent as the original contractor except that:

"(1) The lien statement must state the name of the contractor and be filed within three months after the date supplies, material or equipment was last furnished or labor performed by the claimant; and

"(2) if a warning statement is required to be given pursuant to subsection (c), there shall be attached to the lien statement the affidavit of the supplier or subcontractor that such warning statement was properly given.

"(b) When a lien is filed pursuant to this section, the clerk of the district court shall enter the filing in the mechanic's lien docket. The claimant shall (1) cause a

copy of the lien statement to be served personally upon any one owner and any party obligated to pay the lien in the manner provided by K.S.A. 60-304, for the service of summons within the state, or by K.S.A. 60-308, for service outside of the state, (2) mail a copy of the lien statement to any one owner of the property and to any party obligated to pay the same by restricted mail or (3) if the address of any one owner or such party is unknown and cannot be ascertained with reasonable diligence, post a copy of the lien statement in a conspicuous place on the premises. The provisions of this subsection requiring that the claimant serve a copy of the lien statement shall be deemed to have been complied with, if it is proven that the person to be served actually received a copy of the lien statement.

"(c)(1) A lien may be claimed pursuant to this section for the furnishing of labor, equipment, materials or supplies for the improvement of residential property only if the claimant has:

"(A) Mailed to any one of the owners of the property a warning statement conforming with this subsection; or

"(B) in the claimant's possession a copy of a statement signed and dated by any one owner of the property stating that the general contractor or the claimant had given the warning statement conforming with this subsection to one such owner of the property.

"(2) The warning statement provided for by this subsection, to be effective, shall contain substantially the following statement:

'Notice to owner: (name of supplier or subcontractor) is a supplier or subcontractor providing materials or labor on Job No. _____ at (residence address) under an agreement with (name of contractor). Kansas law will allow this supplier or subcontractor to file a lien against your property for materials or labor not paid for by your contractor unless you have a waiver of lien signed by this supplier or subcontractor. If you receive a notice of filing of a lien statement by this supplier or subcontractor, you may withhold from your contractor the amount claimed until the dispute is settled.'

"(3) The warning statement provided for by subsection (c)(1) shall not be required if the claimant's total claim does not exceed $250.

"(d) *Rights and liability of owner.* The owner of the real property shall not become liable for a greater amount than the owner has contracted to pay the original contractor, except for any payments to the contractor made:

"(1) Prior to the expiration of the three-month period for filing lien claims, if no warning statement is required by subsection (c); or

"(2) subsequent to the date the owner received the warning statement, if a warning statement is required by subsection (c).

"The owner may discharge any lien filed under this section which the contractor fails to discharge and credit such payment against the amount due the contractor.

"(e) As used in this section, 'residential property' means a preexisting structure in which the owner resides at the time the claimant first furnishes labor, equipment, material or supplies and which is not used or intended for use as a residence for more than two families or for commercial purposes."

A Section 1101 lien statement arising out of a contract with the owner must be filed within four months after the last date on which material or supplies were furnished. A Section 1103

subcontractor's lien, however, must be filed within three months after that date, and a warning statement and a copy of the lien statement must be served upon the owner. There is no dispute here but that the lien statements were filed less than two months after materials were last furnished. No copy of the lien statement and no warning statement were served upon the homeowners, who were the record owners when the liens were filed.

We turn first to Star's claim that the trial court erred in finding that the lien statements were invalid because they did not properly name the owners of the properties. Star Lumber relies upon *Construction Materials, Inc. v. Becker,* 8 Kan. App. 2d 394, 659 P.2d 243 (1983), in urging reversal. The homeowners rely upon *Toler v. Satterthwaite,* 200 Kan. 103, 434 P.2d 814 (1967), in urging affirmance. Each side contends that the case relied upon by the other is distinguishable. We find both cases helpful but not controlling here.

In *Construction Materials, Inc.,* Becker, a builder, bought a lot and built a duplex on it. He secured the building materials from Construction Materials, Inc. When the project was almost completed he entered into a contract to sell the improved property to Reese, he conveyed the lot to Reese by deed, and the deed was recorded. Some months later, Construction Materials filed its lien statement, naming Becker as the owner. Construction Materials then filed an action to foreclose its lien, naming Becker, Mr. and Mrs. Reese, and others as defendants. The trial court held that the lien statement was fatally defective; the Court of Appeals reversed, upholding the lien statement. The court concluded that Becker was the record owner and that he had entered into no contract to sell the property to others at the time he bought materials from the plaintiff. That was true until the structure was almost completed. Reese had no interest, legal or equitable, during most of the construction period. Becker was acting on his own behalf and not in the performance of any contractual duty owed to another person. We denied a petition for review on May 6, 1983. See 233 Kan. 1091.

The factual background in *Toler* is much like the factual situation here. The Satterthwaites entered into a written contract with Bontz to purchase a home which was to be built by Bontz on a certain lot. Bontz then bought the lot and recorded its deed. Next, it bought materials from Toler and built the house. Finally,

it conveyed the property to the Satterthwaites and they recorded their deed. Sometime thereafter, Toler filed a subcontractor's lien under Section 1103, naming the Satterthwaites as the owners, Bontz as the contractor and Toler as the claimant and subcontractor. A copy of the lien statement was served upon the Satterthwaites. In the lien foreclosure suit that followed, the defense contended that Bontz, not the Satterthwaites, was the owner. The trial court upheld the lien and we affirmed. We held that during all of the time that the labor was performed and materials were furnished, the Satterthwaites had title to an equitable interest or estate in the property; their equitable interest in the property was increased as construction progressed, they were the record title owners of the property when the lien statements were filed, and, thus, the lien statement was in compliance with the statute. We said:

"To hold that the appellees' [Toler's] lien statements must state the name of Bontz as the owner of the property would be to require something of them which the statute does not require; and to hold that a statement of the names of the appellant as owners at the time the lien statements were filed *was insufficient,* would be to deprive the appellees of liens when they had fully complied with the requirements of the statute." (Emphasis supplied.) 200 Kan. at 110-11.

Another factually similar case is *Logan-Moore Lumber Co. v. Black,* 185 Kan. 644, 347 P.2d 438 (1959). Prior to June 10, 1955, the Blacks entered into a contract with Lewis to build a house according to agreed specifications on a certain lot. They advanced some funds. Lewis then bought the lot, and on June 10, 1955, under contract with Lewis, Logan-Moore Lumber Company began supplying building materials for construction of the house. On November 29, 1955, the lumber company made its last delivery of materials. The Blacks were then in possession of the premises. On December 16, 1955, the deed from Lewis to the Blacks was placed of record. On March 5, 1956, the lumber company filed a mechanic's lien statement naming the Blacks as the owners. The lien statement was filed under what is now K.S.A. 60-1101 and -1102. It alleged that the materials were furnished under contract with the Blacks. It did not name Lewis either as owner or as contractor. Logan-Moore then sought to foreclose its lien, and during the pendency of that action was granted leave to amend the lien statement to substitute the name of Lewis as the owner rather than the Blacks. We reversed, holding that the lien statement was fatally defective when filed

since the lumber company did not have a contract with the Blacks, and the amendment was improper and unauthorized. It would have the effect of creating a lien after the four-month period had expired. Syllabus ¶ 2 of the *Black* opinion is helpful. It reads:

"Where an owner of a tract of land contracts to sell it to another and build a house on it for a single price he continues to be the owner until the deed is given, so that he may charge the property with mechanics' liens as an owner, and the lien claimant need not serve a written notice of the filing of the lien upon the person intending to purchase the property." 185 Kan. 644.

Similarly, in *Logan-Moore Lumber Co. v. Foley*, 181 Kan. 984, 317 P.2d 467 (1957), we held that a Section 1101 lien statement could not be amended to insert the name of a contractor and thus convert the Section 1101 lien to a Section 1103 subcontractor's lien, long after the time when a subcontractor's lien could have been filed.

The basis for a lien claimed under Section 1101 is a contract with the owner of the property and the furnishing of labor and materials used or consumed in improving that real estate. The basis for a subcontractor's lien under Section 1103 is the furnishing of labor or materials to the contractor. Under the facts before us, Capital was the owner of each of the tracts of real estate. Its title was known to the public by virtue of its recorded deed to the premises. It was in possession and was making improvements on the property. Although it entered into contracts to convey each tract upon completion of construction, those contracts were not filed of record and were not notice to the public of the equitable interest of the purchasers. In addition to being the record owner, however, Capital was actually a contractor building the homes for itself and for the future home-owners.

We conclude that under such circumstances, where the record owner of real property makes improvements thereon with materials furnished under contract by a supplier, and meanwhile the owner sells and conveys the real estate to third parties, the supplier may perfect a mechanic's lien under either K.S.A. 60-1101 or K.S.A. 60-1103. The supplier may file a lien statement naming as owner the original record title owner with whom the supplier dealt or, as some of the other lien claimants in this action did, the supplier may file a subcontractor's lien, designating the original record title owner and the subsequent pur-

chasers (the homeowners) as owners, and designating the construction company and former owner as contractor. Star chose the first alternative. We hold that Star Lumber did all that is required of it by statute in naming as owner Capital Construction, the record owner at the time it commenced and continued to make improvements on the property, and with whom plaintiff dealt, and thus the trial court erred in holding that the lien statements were invalid for failure to name the proper owner.

We turn next to the question whether the lien statements were properly verified. All of the statements were signed by Robert Goebel, vice-president of Star, and bore the usual verification indicating that they were subscribed and sworn to on a given date before a notary public in Sedgwick County, Kansas. On direct examination, Goebel testified that when he signed the verifications in the attorney's office, the attorney told him that the verifications were sworn statements and that he was under oath when he signed them. They waited until the attorney's secretary was present because she was the notary public. Goebel testified that he was under oath when he signed the statements. On cross-examination he testified that he could not remember if he had been asked to raise his hand and be sworn. Based upon this testimony the trial court found that the statements "were not sworn to by the claimant nor was anything done which amounted to the administration of an oath before an officer having authority by law to administer and certify oaths and affirmations." We believe this was error. The documents themselves, from their wording and from the signature and seal of the notary public, are prima facie evidence that the person signing the affidavit was properly sworn. A notary's certificate, or jurat, is presumptive evidence that the oath was administered, and so long as the jurat is unimpeached it is conclusive. See 2A C.J.S., Affidavits § 39; 3 Am. Jur. 2d, Affidavits § 16. The witness testified that he was under oath when he signed the lien statements. The fact that he could not, some months or years later, recall precisely the procedure is not sufficient to overcome the presumption. There was no evidence that Goebel was not under oath when he signed the documents.

The trial court also found that the lien statements were invalid because Goebel had no knowledge of the truth or correctness of the statements or their attachments. Goebel, as executive vice-

president of Star Lumber, relied upon the company's records and other officers and employees of the company who compiled them.

The building supply business of today is much different from the small lumber yard, operated by a single proprietor, of yesterday. It is highly improbable that any single employee of a large supplier would have personal knowledge of the delivery of each item to a building site. To require that the individual signing the lien statement on behalf of a corporation have personal knowledge of the delivery of each item would constitute an impossible barrier. Business records, however, are kept of each transaction, and reference to those records must be made in order to determine what items were sold, where delivered, and to whom charged. In a large organization, possibly 30 or 40 or more people are involved. Goebel testified that he was familiar with Star's business records and how they were kept, and that his verification was based upon those records and his knowledge and belief of their accuracy. The wording of the verification is distinguishable from that found in the case of *Lewis v. Wanamaker Baptist Church*, 10 Kan. App. 2d 99, 692 P. 2d 397 (1984). Just as business records are admissible in evidence as an exception to the hearsay rule, K.S.A. 1985 Supp. 60-460(m), we conclude that verification under oath, based upon those records, is sufficient. The lien statements were proper.

The trial court found that Star failed to prove delivery of the materials and supplies to the four job sites. Star claims this was error. We therefore review the evidence. Copies of the invoices were attached to the lien statements, which showed the items delivered and the address to which they were delivered, and many showed the name of the person who signed the receipt for the items when they were delivered. Some of the homeowners visited Star and selected certain materials. The invoices show that those materials were delivered. Mrs. Polan, who works in Star's credit department, testified that she was familiar with the plaintiff's record-keeping, and that the invoices reflected what had been ordered and where it had been delivered. Capital's president testified that he contracted with Star for delivery of materials over quite a period of time, and that in his opinion the prices Star Lumber charged Capital were reasonable. He identified some of the names of persons who had signed the invoices,

acknowledging that they were authorized to pick up and receive materials for Capital. There were some names, however, with which he was not familiar. He said on only a couple of occasions was there any question as to the delivery of the material listed; on those occasions the questions were resolved, to the best of his knowledge. He testified that Capital had an open account with Star. Capital had certain authorized people to sign for pickup, and orders would be placed by phone or in person. There was no evidence that any specific items included within the invoices or lien statements were not delivered to the particular job site to which they were assigned.

There was no specific evidence from truck drivers or other personnel stating that a particular item was delivered to the job site or to representatives of Capital on a given date. The evidence, however, demonstrated a course of delivery over the entire period of time in which the homes were being built, by which Star would deliver upon request—either to the job site or to representatives of Capital—various building materials for use in each of the four separate projects. Most of the orders came by telephone. There was no delivery by Star to Capital's warehouse or to any central distribution point; each invoice indicated the specific job site where the materials included in that invoice were destined. Viewing all of the evidence on the issue of delivery, including the business records of Star, we conclude that this evidence made out a prima facie case of delivery. There was no testimony controverting that evidence. Accordingly, we conclude that the trial court erred in finding that there was no proof of delivery.

Finally, we turn to plaintiff's claim that the trial court erred in failing to grant default judgment against the Smiths. At the commencement of trial, the Smiths did not appear personally and plaintiff moved for a default judgment against them. The Smiths had previously filed an answer in the case and had appeared by counsel; counsel for Fidelity Savings appeared at the trial and informed the court that in a way he was representing the Smiths since Fidelity had an executory contract with the Smiths. K.S.A. 60-255(a) provides in substance that a written notice of a motion for default judgment must be served upon any party who has appeared in the action at least three days before the motion for default may be heard. There is nothing in the

record before us to indicate that such notice was given to the Smiths. We conclude that the trial court did not err in refusing to grant Star a default judgment against the Smiths.

We affirm the order of the trial court denying plaintiff's motion for default judgment as against the Smiths. We reverse the trial court's order dismissing Star Lumber's action in the four cases. We remand this matter to the trial court with directions to enter judgment foreclosing the mechanics' liens of Star Lumber Company against each of the four tracts for the value of the materials furnished.