No. 82,228

OWEN LUMBER COMPANY, *Appellant*, v. ARTHUR CHARTRAND and CAROL CHARTRAND, *Appellees*.

(14 P.3d 395)

Opinion filed December 8, 2000.

*Michael P. Bandre*, of Crouch, Spangler & Douglas, of Harrisonville, Missouri, argued the cause and was on the brief for appellant.

*Jerry D. Fairbanks*, of Goodland, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

ABBOTT, J.: The plaintiff, Owen Lumber Company (Owen Lumber), lumber suppliers and subcontractors on a home in which

homeowners Arthur and Carol Chartrand were defendants, filed a petition to foreclose on a lien. The Chartrands had contracted with Design Build Group, Inc. (Design Build) for the construction of a new home. Because of apparent problems with Design Build's payment to subcontractors, the Chartrands filed an affidavit of equitable interest in the office of the Register of Deeds in Johnson County, Kansas, on December 28, 1995. Owen Lumber filed a mechanic's lien on the home on January 5, 1996. The Chartrands eventually took title to the property by way of quitclaim deed filed on February 5, 1996.

Owen Lumber filed an action to foreclose the lien. Owen Lumber then filed a motion for summary judgment, arguing that it did not need to give the Chartrands notice of its intent to file a lien. The district court denied Owen Lumber's motion for summary judgment. The district court, however, granted partial summary judgment in favor of the Chartrands, even though the Chartrands had not filed a motion for summary judgment. The district court found in pertinent part that Owen Lumber failed to file a "notice of intent to perform" pursuant to K.S.A. 60-1103b and therefore was not entitled to the lien. The district court determined that the only remaining issue under K.S.A. 60-1103b was whether the Chartrands were good faith purchasers for value. The court then heard evidence on this question and found that the Chartrands were good faith purchasers for value because Owen Lumber failed to comply with the notice requirements of K.S.A. 60-1103(c), as Owen Lumber had constructive notice of the Chartrands' interest when the affidavit of equitable interest was filed prior to the date Owen Lumber filed a lien. See *Toler v. Satterthwaite*, 200 Kan. 103, 109-10, 434 P.2d 814 (1967) (owner of interest in real property includes equitable interest).

The Court of Appeals reversed the district court. *Owen Lumber Co. v. Chartrand*, 27 Kan. App. 2d 72, 998 P.2d 509 (2000). First, the Court of Appeals found that the district court had mistakenly found that K.S.A. 60-1103 and 60-1103b were passed in response to *Star Lumber & Supply Co. v. Capital Constr. Co.*, 238 Kan. 743, 715 P.2d 11 (1986), when the timing of the legislation and lack of mention of the *Star Lumber* case suggests it was a coincidence.

Next, the Court of Appeals interpreted the language of 60-1103b(b) and read it as inapplicable where Owen Lumber filed its lien before passage of title to the Chartrands, and therefore the issue of whether the Chartrands were good faith purchasers was irrelevant.

Next, the Court of Appeals disagreed that service on the Chartrands was required under 60-1103(c). The Court of Appeals noted that in 1978 K.S.A. 60-1103 was amended from requiring service of a copy of the lien upon "the owner" to service on "any one owner." The Court of Appeals also found the Chartrands were not obligated to pay the lien, as Design Build was the responsible party and therefore the Chartrands were not "obligated to pay the lien" as provided in K.S.A. 60-1103(c).

The court granted the Chartrands' petition for review. On review, the Chartrands raise three issues. We only address the first two issues, however, as they resolve the case completely.

(1) Whether Owen Lumber as a subcontractor may claim a lien upon new residential property after the passage of title only if the requisite notice of intent to perform was filed prior to the recording of the deed effecting passage of title to the Chartrands. (K.S.A. 60-1103b.)

(2) Whether Owen Lumber, a subcontractor which filed a mechanic's lien, was required to give notice to the Chartrands as a "party obligated to pay the lien" pursuant to K.S.A. 60-1103(c).

## I. NOTICE OF INTENT TO PERFORM

The Chartrands argue that Owen Lumber failed to perfect its mechanic's lien when it failed to file a "notice of intent to perform" as suggested by K.S.A. 60-1103b(b).

K.S.A. 60-1103 governs subcontractors' liens and states in pertinent part:

"(a) *Procedure.* Any supplier, subcontractor or other person furnishing labor, equipment, material or supplies, used or consumed at the site of the property subject to the lien, under an agreement with the contractor, subcontractor or owner contractor may obtain a lien for the amount due in the same manner and to the same extent as the original owner except that:

. . . .

(3) a notice of intent to perform, *if required pursuant to K.S.A. 60-1103b*, and amendments thereto, must have been filed as provided by that section." (Emphasis added.)

K.S.A. 60-1103b was enacted January 1, 1987, amended in 1996, and governs subcontractors' liens for residential property. See L. 1986, ch. 217, § 3; L. 1996, ch. 233, § 1. K.S.A. 60-1103b states in pertinent part:

"(b) A lien for furnishing of labor, equipment, materials or supplies for the construction of new residential property *may be claimed* pursuant to K.S.A. 60-1103 and amendments thereto *after the passage of title to such new residential property* to a *good faith purchaser* for value only if the claimant has filed a notice of intent to perform prior to the recording of the deed effecting passage of title to such new residential property. Such notice shall be filed in the office of the clerk of the district court of the county where the property is located." (Emphasis added.)

The district court granted summary judgment in favor of the Chartrands, finding that the language in K.S.A. 60-1103b required Owen Lumber to file a notice of intent to perform in order to perfect the lien. In doing so, the district court stated:

"K.S.A. 60-1103b does require that subcontractors file a notice of intent to perform with the District Court Clerk. K.S.A. 60-1103 governs when K.S.A. 60-1103b is applicable. Pursuant to K.S.A. 60-1103(a), the requirements of K.S.A. 60-1103b apply to 'any supplier, subcontractor or other person furnishing labor, equipment, material or supplies under an agreement with the contractor, subcontractor or owner/contractor.'

"K.S.A. 60-1103 was amended in the 1986 session of the Kansas legislature. The amendments are shown in Chapter 217 of the 1986 Session Laws. That amendment appears to have been in response to and certainly was made with the knowledge of the decision in the *Star Lumber[& Supply Co. v. Capital Constr. Co.*, 238 Kan. 743, 715 P.2d 11 (1986)] case by the Kansas Supreme Court.

. . . .

"It is clear to me from the statute that it is intended to apply to owner/contractor situations when the residence is being built for new construction and sale under contract to a new owner by a builder owner/contractor.

"Owen Lumber was providing material to the owner/contractor. It is therefore covered by K.S.A. 60-1103 and 60-1103b. If the Chartrands obtained their title from the owner/contractor in a good-faith purchase, then Owen Lumber Company may not claim a lien because they did not file a notice of intent to perform as required by K.S.A. 60-1103b.

"The mechanic's lien that was actually filed by Owen Lumber Company on January 5, 1996, cannot qualify as a notice of intent to perform. The statute itself has a suggested form and requires that a notice of intent to perform, to be effective, must contain substantially the statement that is contained in the notice of intent to perform.

". . . It is clear, therefore, that the mechanic's lien filed on January 5th, 1996, is not a notice of intent to perform."

The Court of Appeals reversed the district court and held that K.S.A. 60-1103b was not applicable. *Owen Lumber*, 27 Kan. App. 2d at 76.

This is the first time we have been called upon to determine the meaning and intent of K.S.A. 60-1103b as it relates to the applicable portions of K.S.A. 60-1103.

Owen Lumber filed its lien on January 5, 1996, prior to the quitclaim deed taken by the Chartrands. Owen Lumber has never filed a notice of intent to perform as suggested by K.S.A. 60-1103b(b). The issue here is simple and straightforward. Was Owen Lumber required to file a notice of intent to perform, pursuant to K.S.A. 60-1103(a)(3) and 60-1103b(b), even though it filed the actual lien before the Chartrands took legal title to the house and property?

The filling of a notice of intent to perform is contingent and not mandatory. K.S.A. 60-1103(a)(3) states that a notice of intent to perform must be filed *only if* K.S.A. 60-1103b requires it. There are, according to the statutory language, situations where K.S.A. 60-1103b does not require the filing of a notice of intent to perform. This is one of those situations. K.S.A. 60-1103b(b) only requires the subcontractor to file a notice of intent to perform where it wishes to attach the lien to the property "after the passage of title."

The purpose of the notice of intent to perform is to warn potential buyers of new construction residential property that the property may be encumbered with a lien. Without the notice of intent to perform, a new homeowner could be unfairly surprised when a lien is filed subsequent to the purchase and possession of the home. The notice of intent provides the potential homeowner with notice. When the actual lien is filed before the potential hom-

eowner acquires the property, it satisfies the rationale behind the "notice" requirement and fairly appraises a potential homeowner that the property has liens attached.

We have no reason to believe that the legislature intended for a notice of intent to perform be filed every time a subcontractor wishes to place a lien on new construction. The statutory language sets forth that the filing of the notice of intent to perform is not necessary where the actual lien is filed before the potential homeowner takes legal title to the property. Had the legislature intended for the notice of intent to perform to be filed in every case, it would have made K.S.A. 60-1103b(b) mandatory rather than contingent.

The Chartrands and the district court point to the decision in *Star Lumber* as an impetus for the enactment of K.S.A. 60-1103b. The Chartrands argue that the legislative intent behind K.S.A. 60-1103b and the amendments to K.S.A. 60-1103 can be surmised by looking at the holding of *Star Lumber* and that the result of *Star Lumber* indicates that the legislature intended for a notice of intent to perform to be filed in cases like the present one. As the Court of Appeals aptly noted:

"The proposed legislation, which eventually became K.S.A. 60-1103b, was introduced as HB 2296 on February 12, 1985. [Citation omitted.] The bill was referred to the Special Committee on the Judiciary on February 13, 1985. [Citation omitted.] It emerged as SB 413 on January 13, 1986. [Citation omitted.] . . . It was first passed by the Senate on a roll call vote on February 12, 1986. [Citation omitted.] The legislation was sent to conference committee twice before final passage. There is no discussion of the *Star Lumber* case in any of the committee minutes. *Star Lumber* was decided on February 21, 1986 [over a year after the bill was first introduced]." *Owen Lumber Co.*, 27 Kan. App. 2d at 75-76.

Whether K.S.A. 60-1103b and the amendments to K.S.A. 60-1103 were introduced as a result of the pending *Star Lumber* litigation is irrelevant. The facts of the *Star Lumber* and the present case are distinguishable. In *Star Lumber*, the plaintiff-subcontractor brought four suits against four homeowners attempting to enforce liens it had filed on four new homes built by the general contractor. As in the present case, all four homes were owned by the general contractor until after construction was complete. The

general contractor had written contracts to purchase each of the four homes and was building them for the purpose of sale to specific named purchasers. After the homes had been sold and the new owners had taken legal title to the property, Star Lumber filed mechanic's liens pursuant to K.S.A. 60-1103. The district court granted summary judgment to the homeowners, ruling that Star Lumber could not file the lien after the homeowners had taken legal title to the property. On appeal, this court reversed, holding that Star Lumber could file a lien against the property even after the property had been transferred to the purchaser as long as the lien named the original owner with whom the subcontractor had worked. This court stated:

"The basis for a subcontractor's lien under Section 1103 is the furnishing of labor or materials to the contractor. Under the facts before us, Capital [the general contractor] was the owner of each of the tracts of real estate. Its title was known to the public by virtue of its recorded deed to the premises. It was in possession and was making improvements on the property. Although it entered into contracts to convey each tract upon completion of construction, those contracts were not filed of record and were not notice to the public of the equitable interest of the purchasers. In addition to being the record owner, however, Capital was actually a contractor building the homes for itself and for the future homeowners.

"We conclude that under such circumstances, where the record owner of real property makes improvements thereon with materials furnished under contract by a supplier, and meanwhile the owner sells and conveys the real estate to third parties, the supplier may perfect a mechanic's lien under either K.S.A. 60-1101 or K.S.A. 60-1103. The supplier may file a lien statement naming as owner the original record title owner with whom the supplier dealt . . . ." 238 Kan. at 750.

While K.S.A. 60-1103b may or may not have been a reaction to the pending *Star Lumber* litigation, the result of the case and the purpose of enacting the statute have no effect on the present case as the lien in this case was filed *before* the Chartrands took legal title to their new home and not *afterward* as was the case in *Star Lumber*. K.S.A. 60-1103b has no application where the subcontractor has filed the mechanic's lien while the property is still owned by the general contractor and has not been transferred to the prospective homeowner.

We hold that the district court erred in its interpretation of K.S.A. 60-1103b and that Owen Lumber did not need to provide notice of intent to perform to the Chartrands.

## II. OWNERSHIP OF THE PROPERTY

The Chartrands next argue that because they were prospective homeowners and equitable owners of the property, Owen Lumber should have sent notice of its mechanic's lien to them as well as to Design Build.

K.S.A. 60-1103(c) describes the procedure for recording a mechanic's lien and states:

*"Recording and notice.* When a lien is filed pursuant to this section, the clerk of the district court shall enter the filing in the general index. The claimant shall (1) cause a copy of the lien statement to be served personally upon *any one owner* and *any party obligated to pay the lien* in the manner provided by K.S.A. 60-304, and amendments thereto, for the service of summons within the state, or by K.S.A. 60-308, and amendments thereto, for service outside the state, (2) mail a copy of the lien statement to any one owner of the property and to any party obligated to pay the same by restricted mail or (3) if the address of any one owner or such party is unknown and cannot be ascertained with reasonable diligence, post a copy of the lien statement in a conspicuous place on the premises." (Emphasis added.)

Owen Lumber sent a notice of its mechanic's lien to Design Build on January 5 1996, but never sent any notice to the Chartrands. At the time that Owen Lumber filed its mechanic's lien, Design Build was the legal owner of the property in question. The Chartrands were prospective owners. The Chartrands filed a notice of equitable interest, however, on December 24, 1995, and took the property by quitclaim deed on February 5, 1996.

In ruling in favor of the Chartrands, the district court found that Owen Lumber had not given sufficient notice of its mechanic's lien to the Chartrands pursuant to K.S.A. 60-1103(c). In doing so, the district court stated:

"The Court also finds that the lien claim of Owen Lumber Company fails because notice was not given as required by K.S.A. 60-1103(c). That statute requires that notice be given through service personally upon any one owner and any party obligated to pay the lien. Service must be made in the manner provided by K.S.A. 60-304.

"In this case, not only was service not provided in the manner required by K.S.A. 60-304, no notice of any kind of the lien filing was given to the Chartrands by Owen Lumber. An affidavit of equitable ownership was on file prior to the date the lien claim was made by Owen Lumber, and prior to the date of the filing of their lien claim.

"In the case of *Toler v. Satterthwaite*, [citation omitted], the Kansas Supreme Court noted that the term owner, for purposes of the mechanic's lien statutes in Kansas 'does not admit of any narrow construction that it includes only the holder of the fee, but means the owner of an interest or estate in real property, and include every character of title, whether legal or equitable, fee simple or leasehold, unquote.' "

The Court of Appeals reversed the district court, holding that the language in K.S.A. 60-1103(c) only required notice to "any one owner" and did not require Owen Lumber to notify all owners having an interest in the property. The Court of Appeals further held that the Chartrands were not a "party obligated to pay the lien." *Owen Lumber*, 27 Kan. App. 2d at 77-78.

## A. "ANY ONE OWNER"

Analysis of the "ownership" language in K.S.A. 60-1103(c), as amended in 1978, is an issue of first impression for this court. See L. 1978, ch. 230, § 3.

The Chartrands argue that as equitable owners of record, Owen Lumber was required to notify them, pursuant to K.S.A. 60-1103(c), of the filing of the mechanic's lien. The statutory language in K.S.A. 60-1103(c) only requires notice to "any one owner" and does not specifically require notice to be sent to all parties having an ownership interest in the property.

In making its decision, the district court referenced *Toler v. Satterthwaite*, 200 Kan. 103, 434 P.2d 814 (1967). In *Toler*, a subcontractor had filed a mechanic's lien against property owned by a husband and wife, the Satterthwaites. After subcontractor Toler filed bankruptcy, suit was filed to foreclose on the lien. The district court held that the lien filed by the subcontractor was valid. The Satterthwaites argued on appeal that the lien was not valid as it had "designated the wrong person as owner of the property." The lien had named the Satterthwaites as owners of the property, even though at the time the lien was filed they were merely prospective owners who had an executory contract with the legal owner to purchase the property upon completion. Because the Satterthwaites were not "owners" of the property, they argued that the lien was not enforceable. At the time the *Toler* decision was made,

K.S.A. 60-1103 (Corrick) required that notice of the mechanic's lien be given to "the owner" of the property and not "any one owner" as the statute now requires. This court held that the Satterthwaites were owners of the property sufficient to satisfy the requirements of K.S.A. 60-1103, stating:

"The [Satterthwaites] argue they were not the owners of the real estate when the [subcontractors] contracted for and furnished the labor and materials. The statute requires that the subcontractor's lien statement contain 'the name of the owner, the name of the contractor,' and that the lien be perfected 'by serving a notice in writing of the filing of such a lien upon the owner of the land.' As used in the statute relating to liens for labor and material, the word 'owner' does not admit of any narrow construction that it include only the holder of the fee, but means the owner of an interest or estate in real property, and includes every character of title, whether legal or equitable, fee simple or leasehold. [Citations omitted.]

"Were the [Satterthwaites] at all times material the owners of an interest or estate in the property involved? We think they were. The record shows that their contracts with [the general contractor] required [the general contractor] to purchase the lot and build the house and upon completion, to convey fee simple title free and clear for the price stated. At least not later than October 11, 1960, when [the general contractor] acquired title to the lot, the [Satterthwaites] became the owners of an equitable interest or estate in the property. Pursuant to the contracts, [the general contractor] . . . began construction of the house and entered into contracts with [Toler], as subcontractors, to furnish labor and materials for the construction. As [Toler] parted with a valuable consideration in the form of labor and materials, the construction progressed, and as construction progressed, the equitable interest or estate of the [Satterthwaites] increased. . . .

"During all the time labor was performed and materials furnished, the [Satterthwaites] had title to an equitable interest or estate in the property which was subject to the liens, and when they received the fee simple title, the liens attached to the full extent of their ownership. . . .

"In view of the foregoing, we are of the opinion the [Satterthwaites] at all times material herein were the owners, equitable, legal, or both, of the property involved and were properly named the owners of the property in [Toler's] lien statements when they were filed, and written notice of the liens was properly served upon them as owners." 200 Kan. at 109-11.

A little over 4 years later, *Schwaller Lumber Co., Inc. v. Watson*, 211 Kan. 141, 505 P.2d 640 (1973), was decided. In *Schwaller Lumber*, the subcontractor mailed notice of the mechanic's lien to Mr. Watson but did not notify Mrs. Watson who also owned the property as joint tenant with rights of survivorship. This court held

that K.S.A. 60-1103 required each owner to be notified of the mechanic's lien and that the mechanic's lien in *Schwaller Lumber* was only valid as to Mr. Watson's interest in the home but was not valid as to Mrs. Watson's interest in the home. This court stated:

"So far as is now pertinent, K.S.A. 1968 Supp. 60-1103(a) provides that a subcontractor shall mail a copy of his lien statement to the *owner of the property.* The Watsons advance the argument that the term 'owner' implies the entire ownership of the real estate in question, and that a subcontractor must mail copies of his lien statement to *all* owners in order to perfect his lien as to any one of them. In other words, the appellants would have us define the term 'owner' as 'owners' and would have us require that all the owners be served before a statutory lien may come into being.
. . . .
"We have said that the purpose of requiring service of a notice of lien is to advise the owner of the property of the existence of the lien, afford him opportunity to investigate the claim and determine its validity and to avoid paying the same account twice. [Citation omitted.]
. . . .
"It is the general rule that service of a mechanic's lien statement on one cotenant is not binding on a cotenant, or other owner, and such is true even though the co-owner happens to be a spouse. [Citations omitted.]
"We conclude that the [subcontractor's lien] claims are not enforceable against Doris M. Watson, since she is not shown to have been personally served with notice. . . .
. . . .
" . . . [A] mechanic's lien may be enforced against the interest of an owner who has properly been served with the required statutory notice, even though the interest of other owners who were not so served may not be subject to the lien. [Citations omitted.]" 211 Kan. at 144-46.

Following *Schwaller Lumber*, the Kansas Legislature amended K.S.A. 60-1103 to require that the notice of a mechanic's lien be served upon "any one owner of the property" instead of "the owner" of the property. Following the amendment, the Court of Appeals decided *Scott v. Strickland*, 10 Kan. App. 2d 14, 691 P.2d 45 (1984). In *Scott*, the subcontractor filed suit against the homeowners seeking to enforce his mechanic's lien for an unpaid lumber bill. As was the case in *Schwaller Lumber*, the lien filed by the subcontractor identified the owner of the property as the husband, Jimmie Scott, even though the property was owned in joint tenancy by Cecelia and Jimmie Scott. Based upon the holding in *Schwaller*

*Lumber,* the Scotts argued that the lien could only attach to the interest owned by Jimmie Scott but that it could not attach to any interest owned by Cecelia Scott. After noting that the language of K.S.A. 60-1103 had been amended, the Court of Appeals held that the subcontractor's lien was valid and attached to the interest owned by Cecelia Scott as well as the interest owned by Jimmie Scott despite the fact that only Jimmie Scott had been identified as the "owner" of the property. In doing so, the Court of Appeals stated:

"[A] person holding any legal or equitable interest in realty may be an owner for the purposes of the mechanic's lien statutes [citation omitted].

. . . .

"[The Scott's] reliance on *Schwaller Lumber* is misplaced in light of the changes effected in K.S.A. 60-1103 since that decision was reached. The lien statement no longer has to be served upon 'the owner' but must only be delivered to 'any one owner of the property.' Thus, the statute now recognizes the possibility of joint ownership and inferentially overrules the conclusion of *Schwaller Lumber* that one owner is not agent for another. The statute now permits service on one owner to satisfy the entire notice to the owner requirement." 10 Kan. App. 2d at 22-23.

In the present case, we are not faced with a situation where the "owners" have joint tenancy interests, but owners which have interests of a legal and equitable nature. Design Build was clearly the legal owner of the property when Owen Lumber filed its mechanic's lien. The Chartrands argue that they had an equitable interest in the property as they had filed a notice of equitable ownership with the district court before Owen Lumber filed the mechanic's lien. The question is whether K.S.A. 60-1103(c) was satisfied when Owen Lumber notified the legal owner of the property but did not notify the equitable owner of the property. We hold that it was. Notifying Design Build of the mechanic's lien satisfied the language in the statute requiring Owen Lumber to provide notice to "any one owner of the property." The statute does not require that Owen Lumber provide notice to "every person having an interest in the property," and failure to do so was not fatal to Owen Lumber's mechanic's lien.

It appears the legislature has now come full circle. It now appears the legislature, in its own unique way, is attempting to go

back to the original requirement. Anyone filing a lien statement would be well advised to examine H.B. 2905; L. 2000, ch. 175, § 7 which was passed in the waning minutes of the 2000 legislative session. The legislature amended K.S.A. 60-1103 so that it applies to an equitable interest that is duly recorded. The unique part is that it only applies if this court denies the petition for review in this case, or, if we accept review, it applies effective the date our decision is filed if we affirm the Court of Appeals' decision. H.B. 2905 is unique and raises several legal questions, none of which are before us.

The district court also found that Owen Lumber had not complied with the requirements set forth in K.S.A. 60-304 in providing proper service to Design Build. It is uncontested that Design Build had "actual notice" pursuant to K.S.A. 60-1103(c). Owen Lumber's mechanic's lien filed with Design Build as the designated legal owner of the property is a valid and enforceable lien.

## B. "PARTY OBLIGATED TO PAY THE LIEN"

K.S.A. 60-1103(c) also requires that a subcontractor notify "any party obligated to pay the lien." The Chartrands argue that they were "obligated to pay the lien," and since Owen Lumber failed to notify them of the mechanic's lien, the lien is unenforceable.

The district court ruled in favor of the Chartrands, finding that they were obligated to pay the lien and that Owen Lumber should have provided them notice pursuant to K.S.A. 60-1103(c). In doing so, the district court stated:

"In this case, with respect to a statute that requires service of the notice upon 'any party obligated to pay the lien,' I think it is clear that a party who has filed a notice of equitable ownership and who is the party against whom the creditor—who is the only party the creditor chooses to proceed against must be given notice of the lien claim in the manner required by K.S.A. 60-1103(c)."

At the time the mechanic's lien was filed, the Chartrands were not "any party obligated to pay the lien." The only party obligated to pay the lien was Design Build, as owners of the legal interest in the property. The Chartrands only became a "party obligated to pay the lien" after they took legal interest in the property by quitclaim deed from Design Build. By taking the property by quitclaim

deed from Design Build, the Chartrands chose to voluntarily make themselves a "party obligated to pay the lien." Owen Lumber, however, was under no obligation to provide notice of the mechanic's lien to the Chartrands when Design Build was the legal owner of the property and the only "party obligated to pay the lien."

The parties do not address the effect of a quitclaim deed. We, therefore, do not consider it either. We would draw the parties' attention to *Ennis v. Tucker*, 78 Kan. 55, 96 Pac. 140 (1908), and *Schwalm v. Deanhardt*, 21 Kan. App. 2d 667, Syl. ¶ 2, 906 P.2d 167 (1995). We express no opinion as to their applicability to this case.

We hold that the district court erred in ruling that the mechanic's lien filed by Owen Lumber is unenforceable and remand to the district court for further proceeding in accordance with this opinion.