NOT DESIGNATED FOR PUBLICATION

No. 112,921

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
ELLA MULLOKANDOVA,
*Appellee*,

and

NISON KIKIROV,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; CHRISTINA DUNN GYLLENBORG, judge. Opinion filed January 15, 2016. Affirmed.

*Judith C. Hedrick*, of Lenexa, for appellant.

*Ronald W. Nelson*, of Ronald W. Nelson, PA, of Lenexa, for appellee.

Before GREEN, P.J., GARDNER, J., and JOHNSON, S.J.

*Per Curiam*:  Nison Kikirov appeals the district court's denial of his motion to terminate maintenance and modify child support awarded to his ex-wife Ella Mullokandova in a default decree of divorce. The orders were based on Mullokandova's claim that Kikirov made $100,000 per year from his furniture business. Kikirov denied that level of income, asserting he only made the substantially lesser income reflected on his W-2 forms and tax returns. The district court found that Mullokandova's testimony on that income was more credible than Kikirov's and declined to modify the orders. Because that credibility determination is adequately supported in the record, we affirm.

1

*Kikirov's prior appeal*

As noted above, the district court originally established the orders at issue when it granted Mullokandova a decree of divorce based on Kikirov's default. Kikirov attempted to have the decree set aside, arguing that his default was the result of excusable neglect and the financial obligations imposed in the decree were unfair. Kikirov did not complain about the decree provision awarding him as his "sole and separate property . . . NY Furniture and Futons." The district court denied Kikirov relief from his default. This court affirmed that denial, rejecting Kikorov's claims that his neglect was excusable, the judgment was void, and that his due process rights were violated in *In re Marriage of Mullokandova & Kikirov*, No. 108,601, 2013 WL 5422358 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1269 (2014) (*Mullokandova I*).

Although this appeal is procedurally distinguishable from *Mullokandova I*, the underlying financial circumstances discussed in the prior appeal help inform the issues we are now considering. Thus, we begin with some of the facts discussed in that appeal that are pertinent for background here.

> "Kikirov and Mullokandova were married in New York City in 2007 and lived there. They had two young children. *Kikirov owned and operated a furniture store specializing in futons*, while Mullokandova worked as a dental hygienist. Their relationship became strained, so in March 2011 Mullokandova and the children moved to Overland Park in Johnson County, where her parents reside.
>
> . . . .
>
> "Mullokandova filed a petition for divorce in Johnson County District Court on November 8, 2011 . . . . Shortly before Christmas, Kikirov traveled to Johnson County ostensibly to visit the children. Mullokandova asked that they meet at a shopping mall in

Overland Park. When Kikirov arrived there, he was served with the divorce petition and a summons. . . .

"Kikirov did not file an answer or otherwise respond to the divorce petition . . .

. . . .

"By not responding, Kikirov was in default in the divorce action. The district court held a hearing on February 13, 2012, to grant the divorce, to fix child custody, to establish spousal maintenance and child support, and to enter a division of property. Kikirov did not appear in person or through a lawyer. Mullokandova and her lawyer were there, and Mullokandova testified as to the couple's financial affairs and other matters. She valued the futon store at $100,000. The district court awarded her $50,000, reflecting half that value. She also testified that she had paid off a $100,000 loan Kikirov had obtained from his relatives before their marriage. The district court ordered Kikirov to pay Mullokandova that amount, although no documentary evidence supported the existence of the loan. Based on Mullokandova's representations as to Kikirov's annual income as roughly $100,000 and her own as $36,600, the district court set spousal maintenance at just over $1,000 a month for 18 months and child support at $2,339 a month. Mullokandova was given custody of the children.

"After learning of the decree and the obligations it imposed on him, Kikirov hired a Johnson County lawyer. On March 22, 2012, the lawyer filed a motion to set aside the default judgment. The motion was scheduled for a 'nonevidentiary hearing' on May 31, 2012, at which the district court heard argument from counsel for each party. Kikirov's lawyer tried to submit evidence, and the district court rebuffed that effort because the hearing had not been set for that purpose. The lawyer didn't proffer the evidence; but, based on the discussion in the record, it appeared to include documents related to Kikirov's income and the family's finances." *Mullokandova I*, 2013 WL 5422358, at *1-2.

The district court denied Kikirov relief from the default judgment at the May 31, 2012, motion hearing. It subsequently refused to reconsider the denial. Kikirov timely

appealed. This court affirmed, specifically rejecting each ground for relief Kikirov advanced. 2013 WL 5422358, at *5-9.

*Kikirov's motion to terminate maintenance and modify child support*

This brings us to the motion to terminate maintenance and modify child support that is the subject of this appeal. Kikirov filed that motion on July 31, 2012, while, on a separate procedural track, the parties were still litigating the default judgment issues. Kikirov's motion in this track sought particular, limited relief:  Kikirov wanted an evidentiary hearing to try to prove he never made the $100,000 on which his maintenance and child support obligations were based. Property division is not at issue here.

Apparently because of the vast difference between the positions of each party on Kikirov's income from the furniture store, Mullokandova's attorney propounded discovery requests seeking information about the finances of Kikirov's business from 2008 through August 1, 2012. Kikirov responded with a simple "Not applicable."

On January 9, 2013, a different district judge (the judge who granted the default, then refused to set it aside, had retired) conducted a full evidentiary hearing on Kikirov's motion. Both parties testified and submitted exhibits during that hearing. The judge also took judicial notice of the transcript of the default divorce hearing.

Kikirov called Mullokandova as his first witness. She testified that during the marriage she worked as a dental hygienist. She claimed that Kikirov made $100,000 per year in his furniture business. Kikirov's attorney asked if she recalled ever filing a tax return that showed Kikirov earned $100,000. Mullokandova replied:  "No but you have to understand that that business is a cash based business. Not everything is on paper." She explained how she arrived at that estimate in the following dialogue with her attorney:

"Q. [Mr. Nelson:] Were you ever presented by your husband how much he made, how much he earned?

. . . .

"A. [Ella Mullokandova:] Yeah. He would bring money in either every day or end of the week, whenever the income would come in, and he would sell and bring it in.

"Q. And when you talk about he would bring it in, bring the money in, what kind of money or what was it?

"A. It would be money that he—cash he would bring home because that is what—that's where we collected it.

"Q. And so you would see the cash that was brought home?

"A. Correct.

"Q. And you testified at the default hearing and then responded to a couple of questions from Ms. Hedrick about your belief that your husband made $100,000?

"A. Correct.

"Q. And how did you come to that belief?

"A. Because again he would bring in the money. We would have like a notebook where we jotted—we would have a notebook where we jotted down all the income he would bring in.

"Q. A notebook?

"A. Where we would kind of write down exactly how much so we could keep track of everything, all the money coming in and out.

5

"Q. And who kept that notebook?

"A. It was in the house. Both of us had access to it.

"Q. And do you have access to that now?

"A. No.

"Q. Did you bring it with you when you moved to Kansas?

"A. No."

Kikirov then testified. He denied receiving cash income from his store. He said that Mullokandova had agreed that he should start the business, and he placed the corporation, originally, in Mullokandova's name. Mullokandova's separate earnings paid the household expenses. Kikirov's counsel asked if Mullokandova had done "anything that affected your ability to operate that business after she moved to Kansas." Kikirov replied that she had, in that she had cancelled its "financing." Kikirov's counsel then asked who owned the corporation. Kikirov asserted that his sister did. He was not asked to explain how the corporate interest he was awarded in the divorce decree was transferred to her. He acknowledged that rent on the space for the store was $8,500 per month on a 5-year lease he and Mullokandova had personally guaranteed. He explained that he was paid so little by NY Furniture (per his W-2s, $17,225 in 2009; $5,525 in 2010; $8,150 in 2011; and $1280 bi-weekly at the time of the hearing) because of the bad economy and because he had taken out loans from family that he wanted to repay.

The trial judge ruled from the bench. The judge explained in far greater detail than above the competing testimonial and documentary evidence concerning Kikirov's income. The judge highlighted Mullokandova's testimony at both the default hearing and the hearing on the motion to modify that a large part of Kikirov's domestic gross income,

which Mullokandova estimated at $100,000, was in cash. The judge then juxtaposed that evidence with Kikirov's denial of the cash income and the documentary evidence he offered to support his request that the court terminate maintenance and reduce his child support obligation to $131 per month. That documentary evidence included Kikirov's W-2 forms, his tax returns, and his Social Security statement, all of which indicated he made considerably less than $100,000 per year.

The trial judge found Mullokandova more credible and determined that Kikirov's income was $100,000. The judge explained that she was "particularly persuaded to rule against Nison" because his responses to Mullokandova's discovery requests "indicat[ed] that no documents existed other than income tax returns to back up his claims of income or expenses and that he did not have any documents to substantiate the numbers put onto the income tax returns" for 2008 through 2011. Kikirov's counsel took issue with the court's suggestion that his responses were somehow misleading and, in spite of the award in the decree, contended he had no ownership in the corporation. The judge responded that even so, she believed Mullokandova's testimony "that cash was coming in, that they were living on cash, [and] that $100,000 was what she believed about they were making off this business" and deemed Kikirov's testimony that he was living in New York on only $3000 to $4000 per year suspect.

Kikirov moved the district court for reconsideration of its denial of his motion to modify. In support, Kikirov argued the district court's "continued deference to [Mullokandova's] uncorroborated and perhaps fraudulent testimony presented in a default hearing is plain error." To that end, he endeavored to highlight what he deemed inconsistencies in Mullokandova's testimony at the default hearing and the hearing on the motion to modify. He also insisted Mullokandova's testimony was not credible in the face of his tax-related evidence. Kikirov also asked the district court to consider his "new evidence" of what Mullokandova really knew about the parties' tax returns, Kikirov's

7

"actual earnings," and Mullokandova's own income during the parties' marriage. That new evidence, which he attached to his motion, included:

• Kikirov's 2012 tax return and W-2 forms, which had not yet been prepared at the time of the January 2013 hearing, and which reflected a gross income of $13,480.

• A form that Kikirov stated he had "now discovered" that Mullokandova submitted in March 2011 to the State of New York Children's Health Insurance Program. The form requested a reduction in Mullokandova's monthly health premium based on a substantially lower income than what she testified to at the hearing. Kikirov insisted the court's consideration of that "new" evidence was required "[t]o prevent manifest injustice" and because it would "demonstrate fraud in the procurement of the original order and the subsequent order."

On June 16, 2014, the same district judge conducted a hearing on Kikirov's motion to reconsider. At the time, Kikirov's petition for review of this court's decision in the first appeal was still pending (our Supreme Court denied review 4 days later). Mullokandova urged the court to deny Kikirov's motion, arguing he was improperly seeking a "do over" of the hearing on his motion to modify. Kikirov argued he was only trying to counter misrepresentations Mullokandova made to the court as to what happened in the other proceedings.

Throughout the lengthy hearing, the judge permitted Kikirov's counsel to fully argue why the court should consider this "new evidence" as well as to reiterate Kikirov's continuing contention that Mullokandova misrepresented his income at the default proceeding and motion hearing. We will not recite the entirety of Kikirov's arguments. We do note, though, that Kikirov's counsel explained why she had not introduced the proffered new evidence at the hearing on the motion to modify: she was "not prepared"

8

to further discredit Mullokandova's "misrepresentation" of Kikirov's income because she believed the tax returns Kikirov offered would more than suffice.

At the close of the hearing, the district judge solicited suggestions as to "what the Court should be focusing on and relying on on the Motion to reconsider." The parties complied. Kikirov complained in his submission that the exclusion of his newly offered evidence would, once again, thwart his entitlement to a full presentation of his case. Mullokandova filed a brief, but it is not included in our record.

On October 14, 2014, the district court issued a thorough, 14-page order denying Kikirov any relief under his motion to reconsider. After setting forth a chronology of the various proceedings, the district court concluded that Kikirov was "seeking again to raise the same issues as before that Ella Mullokandova misrepresented to the court his level of income and asserting that his income is significantly less than that asserted based on the same claims as before." The court reaffirmed its prior finding that Mullokandova's testimony and evidence were "more believable" than Kikirov's. It specifically explained that the evidence Kikirov contended was "newly discovered" was not such evidence, as Kikirov had failed to demonstrate that the evidence "could not with reasonable diligence, have [been] discovered and produced at the trial."

Kikirov timely appeals from the denial of his motion to modify and the denial of his motion to reconsider.

ANALYSIS

Kikirov urges this court to find he is entitled to relief from the maintenance and child support obligations ordered in the default judgment. To that end, he raises five issues in this appeal: Under Issue I he contends that "[t]here was no substantial competent evidence upon which $100,000 of income could reasonably be attributed to

9

[him]"; under Issue II that "[i]t was error for the trial court deciding this motion to 'defer' to the prior judge's original findings at the original default hearing"; under Issue III that "[t]he Court failed to follow the Kansas Child Support Guidelines"; under Issue IV that "[t]he trial court's finding that Ella Mullokandova's testimony was credible was an abuse of discretion"; and under Issue V that "[t]he trial court should have granted [his] motion for reconsideration."

We consider Kikirov's first four issues under the broader topic of whether the court erred in denying Kikirov's motion to modify. We address the remaining issue regarding the motion for reconsideration separately.

## DID THE DISTRICT COURT ERR IN DENYING KIKIROV'S MOTION TO TERMINATE MAINTENANCE AND MODIFY CHILD SUPPORT?

*Standard of review*

Appellate courts review lower courts' decisions on motions to modify maintenance and child support for an abuse of discretion. *In re Marriage of Schoby*, 269 Kan. 114, 120-21, 4 P.3d 604 (2000) (child support); *In re Marriage of Evans*, 37 Kan. App. 2d 803, 804, 157 P.3d 666 (2007) (maintenance). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). As the party asserting the district court abused its discretion, Kikirov bears the burden of showing such abuse. See *In re Marriage of Hair*, 40 Kan. App. 2d 475, 480, 193 P.3d 504 (2008), *rev. denied* 288 Kan. 831 (2009).

Kikirov suggests the district court abused its discretion in several ways. First, he suggests the court made two errors of law (1) by improperly deferring to the district judge's prior findings regarding his income; and (2) by failing to follow mandatory child

10

support guidelines. Allegations of legal error are reviewed de novo. See *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 916, 157 P.3d 1109 (2007).

Kikirov further suggests the court's finding that Mullokandova's evidence was more credible than his is either based on an error of fact or is arbitrary, fanciful, or unreasonable. This court generally reviews a lower court's factual findings under the substantial competent evidence standard. See *Venters v. Sellers*, 293 Kan. 87, 93, 261 P.3d 538 (2011). Substantial competent evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). In reviewing for substantial competent evidence, this court cannot reweigh the evidence, resolve evidentiary conflicts, or assess credibility. See *Progressive Products, Inc. v. Swartz*, 292 Kan. 947, 955, 258 P.3d 969 (2011).

Finally, Kikirov generally challenges the district court's finding that he failed to sustain his burden of proof on the motion to modify. That finding is commonly referred to as a negative finding. To set it aside, Kikirov must prove an arbitrary disregard of undisputed evidence, or some extrinsic consideration such as bias, passion, or prejudice. See *In re Marriage of Kuzanek*, 279 Kan. 156, 159-60, 105 P.3d 1253 (2005).

*Governing law*

Two statutes concern the relief Kikirov sought in his motion to modify:

• K.S.A. 2014 Supp. 23-2903 governs the modification of maintenance, providing in pertinent part: "At any time, on a hearing with reasonable notice to the party affected, the court may modify the amounts or other conditions for the payment of any portion of the maintenance originally awarded that has not already become due."

11

• K.S.A. 2014 Supp. 23-3005(a) governs the modification of child support obligations, providing in pertinent part:  "[T]he court may modify any prior child support order . . . within three years of the date of the original order or a modification order, when a material change in circumstances is shown."

The Kansas Child Support Guidelines (2015 Kan. Ct. R. Annot. 111) (the Guidelines) provide guidance for what can constitute a material change of circumstances that warrants the modification of child support. This includes:  (1) A "[c]hange of financial circumstances of the parents or the guidelines which would increase or decrease by 10%" the amount of adjusted parental income on line F.3 of the child support worksheet, excluding certain types of income; (2) the child turns 6 or 12; (3) the child is emancipated; and (4) "[f]ailure to comply with the terms of a positive or negative adjustment to the Basic Parental Child Support obligation awarded by the court, such as a failure to exercise parenting time or non-utilization of a special needs allocation for private schooling." Guidelines § V.B. 1, 3, 4, and 6 (2015 Kan. Ct. R. Annot. 147-49).

However, our Supreme Court and this court have recognized that the district court, in its discretion, can dispense with the requirement that a change of circumstances be demonstrated before modification of divorce orders when those orders were originally entered on a party's default. In *Hill v. Hill*, 228 Kan. 680, Syl. ¶ 2, 620 P.2d 1114 (1980), our Supreme Court held:

> "Where a custody decree is entered in a default proceeding, and the facts are not substantially developed and presented to the court, the trial court may later, in its discretion, admit and consider evidence as to facts existing at the time of the earlier order, and upon the full presentation of the facts the court may enter any order which could have been made at the initial hearing whether a 'change in circumstances' has since occurred or not."

In *Stovall v. Stovall*, 10 Kan. App. 2d 521, 522, 707 P.2d 1082 (1985), this court extended the *Hill* doctrine to default child support orders.

With these standards of review and governing law in mind, we turn to Kikirov's arguments on appeal, beginning with his contentions of legal error.

*Improper deference to findings at default hearing (Appellant's Issue II)*

Kikirov contends the district court either refused to exercise its discretion or failed to appreciate that it had discretion to modify the prior district judge's finding that Kikirov's annual income was $100,000. He complains that Mullokandova has never had to prove her claim that he earns $100,000, while the court put him "in the untenable position of having to prove he does not earn $100,000." His argument continues that "[t]his became truly Kafkaesque when the trial court took seriously Ella's explanation that the parties' tax returns" did not reflect the $100,000 income because it was in cash.

It is true that the district court indicated that authorities suggested it should give some deference to the previous findings on Kikirov's earnings. Also, both the court and the parties repeatedly referred to the requirement that entitlement to a postdecree modification of support required a showing of change in circumstances. *Hill* and *Stovall* suggest that the district court might have erred had it done more than give lip service to who had the burden of proof on a material change of circumstances or had it relied on, instead of merely referred to, caselaw that required it to defer to prior findings.

Kikirov's problem in this regard is that all the district court did was give those considerations lip service. A close review of the district court's oral findings, however, confirms that it did not defer to earlier rulings. Rather, it considered anew the issue of Kikirov's income. The district court clearly gave Kikirov the opportunity he sought to litigate the issue of his income. That Judge then independently found Mullokandova's

13

testimony that Kikirov had a cash-based income of $100,000 more credible than Kikirov's denial, stating: "Basically, I believe [Mullakandova] over [Kikirov] . . . ." This finding was unqualified, such that even if the initial burden of proof was on Mullokandova, it would have been met. The district court saw and heard the witnesses testify and determined that tax documents from a cash-based business prepared by Kikirov's own accountant, in this instance, did not trump Mullokandova's credible claim that Kikirov took more out of the business than he reported. Such a credibility determination was the district court's prerogative. The record demonstrates that the district court did not erroneously defer to prior rulings or misapply the burden of proof in making its decision. Its comments about deference and burden of proof, even if we determined they were erroneous, were therefore harmless error.

*Failure to follow the Guidelines (Appellant's Issue III)*

Kikirov also complains the district court abused its discretion because it failed to make findings required by the Guidelines concerning Mullokandova's admitted changes in her income and monthly child care expenses since the default hearing. Although a bit difficult to follow, his complaint seems to be that the court had to make such findings and prepare a new child support worksheet based thereon to determine if Kikirov met his burden of proof. Kikirov complains that "[w]ithout the worksheet, the court could not determine the appropriate child support. Without a worksheet, the court could not have determined there was no material change in circumstances justifying a modification in child support."

This issue was not raised below. Kikirov cites no authority to suggest the court had a duty to *sua sponte* prepare a new child support worksheet, especially when it determined that Kikirov's income from the original worksheet was adequately proven. Our Supreme Court has made it clear that without a contemporaneous objection, any issues raised for the first time on appeal will not be heard unless the party properly asserts

14

one of the limited exceptions to this general rule. See *State v. Williams*, 298 Kan. 1075, 1085-86, 319 P.3d 528 (2014) ("Future litigants should consider this a warning and comply with Rule 6.02[a][5] by explaining why an issue is properly before the court if it was not raised below—or risk a ruling that an issue improperly briefed will be deemed waived or abandoned."); Supreme Court Rule 6.02(a)(5) (2015 Kan. R. Annot. 41).

The record does not indicate that Kikirov complained to the district court about the lack of these worksheet findings. When a party fails to object to the lack of factual findings, the issue ordinarily will not be considered on appeal because the district court has not had an opportunity to make any necessary additional findings. *Gilkey v. State*, 31 Kan. App. 2d 77, 77-78, 60 P.3d 351, *rev. denied* 275 Kan. 963 (2003). Kikirov's counsel cross-examined Mullokandova extensively regarding the expense amounts represented in her original domestic relations affidavit and worksheet, but the cross-examination was clearly intended to challenge Mullokandova's credibility, not create a new worksheet.

Finally, Mullokandova persuaded the district court that Kikirov did make the income reflected on the original worksheet. Kikirov did not seek modification on any other basis. Accordingly, Kikirov has failed to persuade us that the district court abused its discretion by failing to follow the Guidelines.

*The court's findings concerning Mullokandova's credibility (Appellant's Issues I and IV).*

Kikirov dedicates the bulk of his argument on appeal to his continuing insistence that the record is devoid of substantial competent evidence from which the district court could properly find that his income is $100,000. In so arguing, he acknowledges Mullokandova's testimony that this was his income both at the default hearing and the hearing on his motion to modify. However, he insists that the district court's reliance on such unbelievable testimony was arbitrary, fanciful, or unreasonable, *i.e.*, that no reasonable person would have taken that view.

15

Kikirov's arguments either disregard or fail to fully appreciate the limits of this court's standard of review. For example, Kikirov contends:

• Kikirov's tax documents and Social Security statement "establish, at a minimum, a rebuttable presumption that Kikirov never earned more than $17,225 per year during the couple's brief marriage." Mullokandova's testimony to the contrary lacked credibility and was insufficient to rebut this presumption because there was no "scintilla of corroborating documentation" or "'shreds of fact'" to support her testimony that Kikirov regularly brought home cash from their futon business, which she testified was tracked in a notebook that was never produced.

• At the default hearing, Mullokandova "never claimed that the $100,000 income [Kikirov] supposedly earned was from cash." Rather, she only testified about this at the hearing on Kikirov's motion to modify after she was questioned about the parties' joint tax returns. And there was never any evidence offered that he currently earns that amount.

• The record is devoid of evidence to support the district court's speculation that Kikirov could not afford to live in New York on his claimed income. He offered "abundant evidence to the contrary." Likewise, Mullokandova's testimony at the default hearing showed she was the breadwinner in the family.

• In closing arguments, Mullokandova's counsel misled the court into believing Kikirov's valid discovery answers were somehow dishonest or evasive so as to avoid any support obligations.

The district court properly distinguished the same authorities Kikirov cites in support of these arguments on appeal. For example, Kikirov contends the district court's speculation about a disconnect between his claimed income and lifestyle cannot support

16

the court's judgment for the same reasons this court found such conjecture improper to support the district court's income calculation in *In re Marriage of Kunzle*, No. 96,332, 2007 WL 3146683 (Kan. App. 2007) (unpublished opinion). The district court here properly held *Kunzle* is procedurally distinguishable and does not support Kikirov's argument in the way he suggests. In *Kunzle*, this court reviewed a district court's finding of the husband's income in the original divorce. In that regard, this court found the district court's conjecture about the parties' lifestyle and wife's estimation of their income were insufficient to support the trial court's finding that the husband's income was $120,000 per year. 2007 WL 3146683, at *3. Here, on the other hand, Mullokandova explained how she arrived at her $100,000 annual figure:  she saw the cash, and the parties kept track of it in a notebook.

Kikirov also relies on *In re Marriage of Michel*, No. 107,867, 2013 WL 5976073, *1 (Kan. App. 2013) (unpublished opinion), where this court found "insufficient evidence to support the amount of income the district court imputed to Donato due to the land and cattle Donato owned in Mexico for purposes of calculating child support." As the district court here pointed out, however, the court in *Michel* did not find that the wife's testimony that husband had an interest in property in Mexico lacked credibility. Rather, the court found the amount of income the court imputed based on that ownership interest was arbitrary. Here, the district court highlighted Mullokandova's specific testimony about how she arrived at the $100,000 when denying the motion to reconsider, reiterating that it was credible and sufficiently specific to support that figure. Mullokandova's testimony was not as arbitrary as Kikirov suggests. Again, we cannot reweigh the evidence or revisit the district court's credibility determination.

The final authority Kikirov cites in support of his challenge to the sufficiency of the evidence is this court's decision in *In re Marriage of Everett & Zipper*, No. 108,141, 2013 WL 646500 (Kan. App. 2013) (unpublished opinion). There, this court found the trial court "arbitrarily constructed" or imputed an income to the former husband without

17

substantial support in the evidence when it ordered an increase in child support. 2013 WL 646500, at *4. The district court there improperly arrived at its new income figure not based on evidence of increased income but rather on what it deemed "'common knowledge that the medical costs, community, and incomes within the medical field has increased dramatically over that period of time.'" 2013 WL 646500, at *2, 4. Kikirov suggests that in this case the district court "'randomly' impute[d] income without substantial support in evidence" and without "adequate explanation." Here the income was not imputed, and the court found the amount was adequately explained. The district court heard testimony to support Mullokandova's position that Kikirov's mostly cash income was the $100,000 figure used by the district court in determining Kikirov's support obligations.

As for Kikirov's challenge to Mullokandova's credibility, in arguing that "Mullokandova's testimony is so clearly not credible on its face that no reasonable person could adopt the view of the court," Kikirov goes to great lengths to highlight what he deems various discrepancies during her testimony and to challenge the truthfulness of her assertions. But he cites no authority that would allow this court to go outside the boundaries of its standard of review to second-guess the district court's contrary conclusion. See *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013) (noting failure to support point with pertinent authority or show why it is sound despite lack of supporting authority or in face of contrary authority is akin to failing to brief issue).

To the extent that Kikirov is perhaps attempting to show he is entitled to relief under K.S.A. 2014 Supp. 60-260(b)(3) (fraud), he expressly, for strategic reasons, declined an invitation from the district court that it consider his motion on that basis. Thus, such a contention is not properly before this court.

In sum, Kikirov's arguments in support of his challenge to the finding that he makes $100,000 annually improperly call upon this court to reweigh the evidence or

18

assess credibility, which, again, this court cannot do. Mullokandova's testimony in this circumstance constituted substantial competent evidence. Had the court believed Kikirov, a decision based on his testimony would have likewise been adequately supported. Neither party's extrinsic evidence was, as the district court pointed out, particularly persuasive. Accordingly, Kikirov has failed to show that the district court abused its discretion when it believed Mullokandova and denied the motion to modify.

DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING KIKIROV'S MOTION TO RECONSIDER?

Kikirov's fifth and final argument challenges the district court's denial of his motion to reconsider.

*Standard of Review*

Our courts generally treat motions to reconsider as motions to alter or amend under K.S.A. 2014 Supp. 60-259(f). *Exploration Place, Inc. v. Midwest Drywall Co.*, 277 Kan. 898, 900, 89 P.3d 536 (2004). The denial of such a motion is reviewed on appeal for an abuse of discretion. 277 Kan. at 900. However, Kikirov also suggests that the district court erred in refusing to allow him the "opportunity to submit evidence that was not available at the time of the hearing on January 9, 2013 . . . that would rebut Mullokandova's testimony" that Kikirov earns $100,000 per year. This argument implicates a possible legal error subject to de novo review.

*Analysis*

K.S.A. 2014 Supp. 60-259(a)(1)(E) provides that a new trial can be granted where a party comes forward with "newly discovered evidence that is material for the moving party which it could not, with reasonable diligence, have discovered and produced at the trial." In this regard, the district court found:  "In this case, there is not any claim or proof

19

that Nison Kikirov with reasonable diligence could not have discovered and produced at past hearings the evidence that he now seeks to present under this new motion."

Kikirov argues "it is understandable" that he "would not have had additional evidence at hand for the purpose of discrediting Mullokandova's testimony" because Mullokandova only first suggested during the hearing on the motion to modify that the $100,000 was mostly cash from the family's cash-based business. Thus, he states that he did not track down the evidence of Mullokandova's application for the reduced health insurance premiums or seek out an affidavit from his accountant until after he realized the court would rely so heavily on Mullokandova's testimony and give such little weight to his tax returns. The practical defect in this argument is that Kikirov knew all along that Mullokandova claimed he made $100,000 per year from the store.

Kikirov's argument misapplies the statutory standard. As the district court pointed out, other jurisdictions have recognized that a motion to reconsider is not a place to raise new issues or obtain a second chance to present a stronger case. See *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (Under federal law, "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. [Citation omitted.] It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."); *Sithon Maritime Co. v. Holiday Mansion*, 177 F.R.D. 504, 505 (D. Kan. 1998) (Under federal law, "[a]ppropriate circumstances for a motion to reconsider are where the court has obviously misapprehended a party's position on the facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination. [Citations omitted.] A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider."). Just because Kikirov did not anticipate that the evidence might be helpful does not make the evidence "newly discovered" for purposes of admissibility under K.S.A. 2014 Supp. 60-259(a)(1)(E). Put another way, Kikirov seems to believe his reasonable diligence to

20

discover "new" evidence was not triggered until he became aware of what evidence the court would hang its hat on in making its ruling. If that were the test, litigants would no doubt seek to relitigate issues in postjudgment proceedings after the court revealed how it weighed the evidence and assessed credibility. The evidence itself must be newly discovered. Counsel's new realization that the evidence could perhaps have helped at the earlier hearing does not make the evidence newly discovered.

Even if the evidence could be properly characterized as newly discovered, our Supreme Court has recognized that a new trial is not to be granted on the basis of newly discovered evidence that merely tends to impeach or discredit the testimony of a witness. See *State v. Norton*, 277 Kan. 432, 436-38, 85 P.3d 686 (2004). That appears to be the purpose for which Kikirov wanted to admit this evidence. Thus, Kikirov has failed to demonstrate a legal error or an abuse of discretion in the district court's denial of his motion for reconsideration.

Affirmed.