No. 96,391

Owen Lumber Company, *Appellee*, v. Arthur Chartrand and Carol Chartrand, *Appellants*.

(157 P.3d 1109)

Opinion filed May 4, 2007.

*Mark S. Gunnison*, of Payne & Jones Chartered, of Overland Park, argued the cause, and *Arthur J. Chartrand*, of Chartrand Law Office, of Olathe, was with him on the briefs for appellant.

*Michael P. Bandre*, of Couch, Pierce, King & Hoffmeister, of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This case involves a mechanic's lien of plaintiff Owen Lumber Company, a subcontractor, against property owned by defendants Arthur and Carol Chartrand. The case has been previously before this court twice. See *Owen Lumber Co. v. Chartrand*, 270 Kan. 215, 14 P.3d 395 (2000) (*Chartrand I*), and *Owen Lumber Co. v. Chartrand*, 276 Kan. 218, 73 P.3d 753 (2003) (*Chartrand II*). On this appeal, which was transferred to this court on its own motion pursuant to K.S.A. 20-3018(c), four issues are raised: (1) Did Owen Lumber properly serve notice of its mechanic's lien statement on the Chartrands as required by K.S.A. 60-1103(c)? (2) Does K.S.A. 60-1103(d) apply to limit the amount owed by the Chartrands on the mechanic's lien? (3) Did the district court err in awarding prejudgment interest? and (4) Were the Chartrands denied the opportunity for a fair trial because the same attorneys represented the plaintiff and other defendants in this multiparty case? We reject all claims of error.

### Factual and Procedural Background

In 1994, the Chartrands contracted with Design Build Group, Inc. (Design Build) for the construction of a new home. When construction began, Design Build owned the property on which the home was built. Owen Lumber supplied some of the building materials to Design Build for the home. Because of apparent prob-

lems with Design Build's payment to subcontractors, the Chartrands filed an affidavit of equitable interest in the office of the Register of Deeds in Johnson County, Kansas, on December 28, 1995. Owen Lumber filed a mechanic's lien on the home on January 5, 1996. Initially, Owen Lumber gave notice of the lien to Design Build as the legal owner but did not give notice to the Chartrands.

Before taking title to the home, the Chartrands received a title report revealing numerous mechanics' liens filed against the property, including the lien filed by Owen Lumber. The Chartrands took title to the property by a quitclaim deed from Design Build on February 5, 1996. Owen Lumber subsequently filed an action to foreclose its lien in January 1997. The district court granted summary judgment in favor of the Chartrands because Owen Lumber had failed to file a notice of intent to perform as required by K.S.A. 2002 Supp. 60-1103b and had failed to comply with the notice provisions of K.S.A. 60-1103(c).

The Court of Appeals reversed on both issues, and this court affirmed the Court of Appeals' decision in *Chartrand I*. This court held that Owen Lumber was not required to file a notice of intent to perform under K.S.A. 60-1103(a)(3) and K.S.A. 2002 Supp. 60-1103b(b) because it filed the actual lien before the Chartrands took legal title to the property. 270 Kan. at 219-21. With regard to the application of K.S.A. 60-1103(c), this court determined that the statutory requirement of service of a mechanic's lien on "any one owner" of the property was satisfied when Owen Lumber notified Design Build, the legal owner of the property, of the lien. The statute did not require that Owen Lumber also notify the Chartrands, the equitable owners of the property. 270 Kan. at 226.

After the Court of Appeals' decision but before this court granted review of the case, the legislature passed 2000 H.B. 2905 which amended K.S.A. 60-1103(c) to require notice to the holder of a recorded equitable interest. The bill stated that the amendments were to take effect "[o]n the date of the issuance by the *Kansas supreme court of an opinion in the case of Owen Lumber Company vs. Chartrand,* case no. 82,228, which affirms the decision of the Kansas court of appeals or on the date the Kansas su-

preme court denies the petition for review." L. 2000, ch. 175, sec. 7. This court issued its *Chartrand I* opinion affirming the Court of Appeals on December 8, 2000; thus, the statutory amendments took effect on that date.

On remand, the district court found that the 2000 amendments to K.S.A. 60-1103(c) applied retrospectively and that, because Owen Lumber had failed to serve notice of its lien upon the Chartrands, it was precluded from foreclosing its lien. In *Chartrand II*, this court observed that the legislature clearly indicated its intent that the amendments were to apply to foreclosure actions pending at the time the amendments became effective. The court went on, however, to address the question of whether such retrospective application affected a vested or substantive right and thereby violated the Due Process Clauses of the United States and Kansas Constitutions. 276 Kan. at 221-28.

After considering the factors articulated in *Resolution Trust Corp. v. Fleischer*, 257 Kan. 360, 369, 892 P.2d 497 (1995) (nature of the rights at stake, how the rights were affected, and the nature and strength of the public interest furthered by the legislation), and noting that Owen Lumber had complied with the statutes in effect at the time of filing its lien and the foreclosure action, this court held that it would violate due process to retrospectively apply the amendments contained in K.S.A. 2002 Supp. 60-1103(c) without giving the lienholder a reasonable time to comply with the new requirements. *Chartrand II*, 276 Kan. at 227-28.

Thus, the *Chartrand II* court held that Owen Lumber "should serve the lien statement in the manner required within 60 days of the date of the mandate in this case." 276 Kan. at 228. In so holding, the *Chartrand II* court rejected Owen Lumber's contention that the new provisions were satisfied by the Chartrands' "actual knowledge" of the mechanic's lien, stating that "[a]ctual notice or knowledge is different from actual receipt of a copy of the lien statement." 276 Kan. at 230. Having stated that there was no allegation and no evidence that Owen Lumber ever attempted to serve a copy of the lien statement upon the Chartrands or mail a copy to them by restricted mail, the *Chartrand II* court noted the well known Kansas rule of law that " 'only strict compliance with

the [statutory provisions] will give rise to an enforceable mechanic's lien.' " 276 Kan. at 230 (quoting *Scott v. Strickland*, 10 Kan. App. 2d 14, 20, 691 P.2d 45 [1984]). The case was reversed and remanded to the district court. *Chartrand II*, 276 Kan. at 231.

The district court set the matter for trial to determine whether Owen Lumber subsequently complied with the mandate in *Chartrand II*. After the trial, the district court made extensive findings of fact and conclusions of law and entered judgment on the mechanic's lien in favor of Owen Lumber in the amount of $12,980.61, plus prejudgment interest in the amount of $11,682.55, continuing at a rate of "$3.56 per day for each day from February 6, 2005 until the date judgment is entered, and continuing postjudgment interest at the statutory rate." The court's journal entry of judgment was filed on May 10, 2005.

The Chartrands' motion for reconsideration was denied, and now they bring a timely appeal.

Issue 1: *Did Owen Lumber Properly Serve Notice of its Mechanic's Lien Statement on the Chartrands as Required by K.S.A. 60-1103(c)?*

First, the Chartrands contend that Owen Lumber should not be permitted to foreclose on its mechanic's lien because Owen Lumber failed to properly serve a copy of the lien statement on them as required by K.S.A. 60-1103(c) and in compliance with this court's mandate in *Chartrand II*. This contention lacks merit.

### Standards of Review

The Chartrands' argument requires this court to interpret the language of K.S.A. 60-1103(c). The interpretation of a statute is a question of law over which this court has unlimited review. *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 374, 130 P.3d 560 (2006).

Moreover, the Chartrands' argument requires our review of the district court's findings of fact and conclusions of law contained within its memorandum decision. The function of an appellate court is to determine whether the court's findings of fact are supported by substantial competent evidence and whether the findings

are sufficient to support the court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). An appellate court's review of conclusions of law is unlimited. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.3d 214 (2004).

## Evidence on Remand

It is undisputed that after the remand Owen Lumber did not achieve personal service or service by restricted mail upon the Chartrands. However, during the trial to the court on remand, there was evidence that Owen Lumber attempted service. A secretary of Owen Lumber's attorney testified that she prepared a cover letter and mailed it with a photocopy of the mechanic's lien to the Chartrands. According to the secretary, she mailed two sets—one via certified mail, restricted delivery, and one *via* first-class mail. The restricted mail was returned as "unclaimed." The "unclaimed" mail was admitted into evidence. The secretary testified that the first-class mail was never returned.

The Chartrands also testified on remand. Arthur Chartrand stated that he and his wife received several cards from the post office indicating that "something was there," but he "didn't feel compelled to go to the post office to pick up" the mail. He indicated that the mail at the post office might have been "junk mail." With regard to first-class mail, Mr. Chartrand denied receiving any mail from the law firm representing Owen Lumber within 60 days of this court's mandate in *Chartrand II*.

As for Carol Chartrand, she testified that they received certified mail cards from the post office during this time "but it wasn't a name that I recognized." Mrs. Chartrand denied receiving any correspondence from Owen Lumber's lawyers between September 25, 2003, and November 30, 2003.

Following the trial, the district court found that the Chartrands received from the post office notice of the certified mail, but they declined to pick it up. In confirmation that the documents were also sent by first-class mail, the court noted that, in addition to the

secretary's testimony, the letter sent by Owen Lumber's attorney to the Chartrands stated: "I am also forwarding copies of these documents by regular mail service."

The district court found that the Chartrands were "well aware that Owen Lumber Company had been required to send a notice to [them] within 60 days of the mandate or the claim against the Chartrands would be lost. The testimony that they didn't pick up the mail because they believed it would be junk mail is not credible." The court concluded that "formal service" failed because the Chartrands decided not to pick up the restricted mail that they "knew" had come from Owen Lumber, and Owen Lumber did not attempt service by other means.

Regardless of the failure to meet the K.S.A. 60-1103 "formal" service requirements, the district court found the Chartrands "actually received a copy of the lien statement" as provided in the savings provision of K.S.A. 60-1103(c). The court indicated that the Chartrands (1) had previously received a copy of the lien statement as an attachment to the 1997 petition, which was properly served, and (2) had received a copy of the lien statement by regular mail after issuance of the mandate in *Chartrand II*. Relying on *Shriver v. National Bank*, 117 Kan. 638, 649, 232 Pac. 1062 (1925), the court stated that there is a presumption under Kansas law that a letter properly addressed and mailed was received by the addressee. Finding that Owen Lumber met the requirements of what the district court called the "substantial compliance" provisions of K.S.A. 60-1103(c), the court concluded that Owen Lumber could proceed with the enforcement of its mechanic's lien.

*Service Requirements*

The Chartrands take issue with the district court's approval of Owen Lumber's notice of the mechanic's lien statement to the Chartrands, as equitable owners, when no "formal notice" requirements of personal service or service by registered mail were met under K.S.A. 60-1103.

With respect to mechanics' liens, K.S.A. 60-1103(c) allows for either personal service or service by restricted mail. The statute specifies, in pertinent part:

"The claimant shall (1) cause a copy of the lien statement *to be served personally* upon any one owner, any holder of a recorded equitable interest and any party obligated to pay the lien in the manner provided by K.S.A. 60-304, and amendments thereto, for the service of summons within the state, . . . (2) *mail a copy* of the lien statement to any one owner of the property, any holder of a recorded equitable interest and to any party obligated to pay the same *by restricted mail* or (3) if the address of any one owner or such party is unknown and cannot be ascertained with reasonable diligence, post a copy of the lien statement in a conspicuous place on the premises. The provisions of this subsection requiring that the claimant serve a copy of the lien statement shall be deemed to have been complied with, if it is proven that *the person to be served actually received a copy of the lien statement.* No action to foreclose any lien may proceed or be entered against residential real property in this state unless the holder of a recorded equitable interest was served with notice in accordance with the provisions of this subsection." (Emphasis added.)

## Notice Sent by First-Class Mail

One of the reasons the district court found that Owen Lumber served notice of the mechanic's lien statement on the Chartrands was the evidence that the notice was sent as a backup by first-class mail. The Chartrands denied receiving this notice. Regardless, the Chartrands argue that because this was not a valid method of service pursuant to K.S.A. 60-1103(c), any alleged service by first-class mail did not satisfy the statutory requirements.

The district court cited *Shriver*, 117 Kan. 638, to support its ruling that in Kansas there is a presumption that a letter properly addressed and mailed was received. See also, *e.g.*, *State v. Thrash*, 267 Kan. 715, Syl. ¶ 4, 987 P.2d 345 (1999) (Kansas Department of Revenue is entitled to rely upon presumption that letters sent by ordinary mail postage prepaid are received by the addressee in ordinary course of mail). *Shriver* did not involve service of a mechanic's lien and is further distinguishable because it did not involve a statute requiring service by certified mail.

As the Chartrands argue, the district court's theory of presumptive receipt of legal service runs at odds with K.S.A. 60-304 (service of process) and the service requirements in K.S.A. 60-1103(c). The theory of presumptive receipt of legal service is a general rule providing that "[s]ervice of process by mail is deemed complete when the summons or writ is deposited in the post office, properly ad-

dressed, with the proper amount of postage" and generally "service by mail is complete upon mailing, [therefore] nonreceipt of the papers does not affect the validity of the service." 62B Am. Jur. 2d, Process § 212, p. 784. However, "[i]f service by mail is to be effective, the statute or rule authorizing such kind of service must be complied with." 62B Am. Jur. 2d, Process § 211, p. 783. Moreover, "[a] statute allowing . . . service by [certified] mail within the state *must be strictly complied with.*" (Emphasis added.) 62B Am. Jur. 2d, Process § 211, p. 783.

In *Kopp's Rug Co. v. Talbot,* 5 Kan. App. 2d 565, 567, 620 P.2d 1167 (1980), the Court of Appeals mentioned the "presumption of delivery" theory and reasoned as follows:

"As we understand the purpose of K.S.A. 60-103 [defining restricted delivery] (see author's comment in Gard's Kansas C. Civ. Proc. § 60-103 [1963] cited with approval in *Rounsavell v. Tipton,* 209 Kan. at 367), it is that the restricted notice requirement replaces the presumption of delivery with the sureness of proof by the return receipt. The law does not require a useless act that in no way would have changed the notice actually given."

More recently, the *Chartrand II* court emphasized both strict compliance with K.S.A. 60-1103 when dealing with mechanics' liens and actual receipt of a copy of the notice of the lien statement. 276 Kan at 230.

We conclude that the theory of presumptive receipt of legal service which provides that service of process by mail is deemed complete when the summons or writ is deposited in the post office, properly addressed, with the proper amount of postage does not apply to K.S.A. 60-1103(c) which requires service by restricted mail.

## Savings Provision

Contrary to the Chartrands' argument, however, the district court did not rely on the presumption for proof of service. Rather, the district court used the presumption as a substitute for proof that there had been actual receipt of the lien statement. Actual receipt would trigger the savings provision of K.S.A. 60-1103(c) ("The provisions of this subsection requiring that the claimant serve a copy of the lien statement shall be deemed to have been

complied with, if it is proven that the person to be served actually received a copy of the lien statement."). The Chartrands attempted to rebut this presumption by testifying that they had not, in fact, received a copy of the lien statement during the 60-day period after the mandate in *Chartrand II*. The district court discredited this testimony and, presumably, found that the presumption was not rebutted. We need not resolve this duel between presumption and rebuttal, however, because we agree with the district court's alternative finding that the saving provision applied because, in 1997, Owens Lumber properly served the Chartrands a petition to which a copy of the mechanic's lien statement was attached.

The Chartrands take issue with the district court's reasoning on this alternative point because of the fact that this court, in *Chartrand II*, rejected Owen Lumber's contention that the new provisions of the statute were satisfied based upon the Chartrands' admission that they had "actual knowledge" of and had reviewed the mechanic's lien filed by Owen Lumber prior to accepting a quitclaim deed to the property. 276 Kan. at 228-29. Even though the Chartrands had knowledge of the lien because of Mr. Chartrand's search of records and from the title insurance report, this court emphasized that "[a]ctual notice or knowledge is different from actual receipt of a copy of the lien statement." 276 Kan. at 230.

In this appeal, Owen Lumber does not focus on the "actual notice" allegation raised in *Chartrand II* but on the Chartrands' "actual receipt" of the mechanic's lien statement. The district court accepted the distinction, citing the difference between (1) notice received through the public filing of the lien and through the title insurance report and (2) the Chartrands' receipt of a copy of the lien statement in 1997 when they were served with the original petition. The district court concluded the Chartrands' actual receipt of the mechanic's lien statement triggered the savings clause of K.S.A. 60-1103(c).

Presumably to counterattack this application of the savings clause, the Chartrands cite *Estate of Norris v. Hastings*, 36 Kan. App. 2d 479, 141 P.3d 511 (2006), for the proposition that service may be insufficient even after a party concedes to receiving actual notice. In *Hastings*, a personal injury case, valid service of process

was not achieved within the time allowed under the applicable statute, K.S.A. 60-203(a)(1). Similarly, in the present case the "formal service" methods were not successfully utilized by Owen Lumber within the 60-day time limit set in *Chartrand II.*

However, unlike *Hastings,* we must apply the savings provision at the end of K.S.A. 60-1103(c). That provision is clear; the service requirements will be deemed to have been met if it is proven that the person to be served actually received a copy of the lien statement. The record supports the district court's conclusion that the lien statement was received. Although the Chartrands never stipulated to receiving the lien statement, the record shows that the statement was attached to the 1997 petition which was served upon the Chartrands as named defendants. Additionally, the Chartrands essentially concede in their appellate brief that they did receive the petition and attachment in 1997.

The district court correctly applied the savings provision of K.S.A. 60-1103(c) and correctly concluded that because the Chartrands obtained actual receipt of the mechanic's lien statement, the statutory notice requirement was satisfied.

Issue 2: *Does K.S.A. 60-1103(d) Apply to Limit the Amount Owed by the Chartrands on the Mechanic's Lien?*

Next, the Chartrands argue that K.S.A. 60-1103(d) limits the total amount owed on the mechanic's lien. The standards of review for this issue are the same as those applied to the prior issue because resolution of the arguments requires construction of the statute and review of the district court's findings of fact and conclusions of law.

K.S.A. 60-1103(d) states:

"(d) Rights and liability of owner. The owner of the real property *shall not become liable for a greater amount than the owner has contracted to pay the original contractor,* except for any payments to the contractor made:

(1) Prior to the expiration of the three-month period for filing lien claims, if no warning statement is required by K.S.A. 60-1103a, and amendments thereto; or

(2) subsequent to the date the owner received the warning statement, if a warning statement is required by K.S.A. 60-1103a, and amendments thereto.

"The owner may discharge any lien filed under this section which the contractor fails to discharge and credit such payment against the amount due the contractor." (Emphasis added.)

The Chartrands argue that they contracted with Design Build to pay Owen Lumber a maximum of $59,169.37 for building materials, that Design Build paid Owen Lumber a total of $54,337.85, and that, therefore, only $4,831.52 remains due on the mechanic's lien.

In rejecting the Chartrands' argument that they should only be liable for a difference of $4,831.52, the district court found that the Chartrands' contention failed to take into account who the "owner" was at the time Owen Lumber entered into an agreement to provide materials for use in building the home. See K.S.A. 60-1103(a) (providing any supplier or subcontractor may obtain lien for labor, equipment, material, or supplies provided under an agreement with a contractor, subcontractor, or owner contractor). The district court noted that it was only after Owen Lumber recorded its mechanic's lien that the Chartrands obtained legal title through a quitclaim deed, and the holder of a quitclaim deed does not gain priority over adverse interests that were discoverable by reasonable diligence. See *Schwalm v. Deanhardt*, 21 Kan. App. 2d 667, Syl. ¶ 2, 906 P.2d 167 (1995). Consequently, the district court concluded that any limitation imposed from K.S.A. 60-1103(d) would apply only to a contract entered into between Design Build, the owner at the time the lien was filed, and Owen Lumber.

The district court's reasoning—that subsection (d) would apply to Owen Lumber and Design Build—does not fit into the plain language of K.S.A. 60-1103(d) in that Owen Lumber was a "subcontractor," not the "original contractor." Design Build was the original contractor. A plain reading of the statute involves a limitation of the owner's liability based upon the amount the owner contracted to pay the original contractor, not the amount the original contractor agreed to pay a supplier or subcontractor.

There is an ambiguity, however, as to whether the reference to owner in subparagraph (d) includes an owner contractor. If so, then how would one construe the term "original contractor"? There is also an ambiguity as to whether any limitation applies to equitable

owners. The *Chartrand I* court, although not directly addressing this issue, indicated that the statute should not be construed to limit the equitable owner's liability. The court noted:

"At the time the mechanic's lien was filed, the Chartrands were not 'any party obligated to pay the lien.' The only party obligated to pay the lien was Design Build, as owner of the legal interest in the property. The Chartrands only became a 'party obligated to pay the lien' after they took legal interest in the property by quitclaim deed from Design Build. By taking the property by quitclaim deed from Design Build, the Chartrands chose to voluntarily make themselves a 'party obligated to pay the lien.' " 270 Kan. at 227-28.

This conclusion is consistent with the purpose of requiring service of notice of the lien, which is to advise a property owner of "the existence of the lien, afford him opportunity to investigate the claim and determine its validity and to avoid paying the same account twice." *Schwaller Lumber Co., Inc. v. Watson,* 211 Kan. 141, 145, 505 P.2d 640 (1973); see *Chartrand I*, 270 Kan. at 219-20, 225-26. In *Dick v. LaVilla Inns, Inc.*, 212 Kan. 101, 102, 510 P.2d 188 (1973), this court stated that K.S.A. 60-1103(d) [then K.S.A. 1972 Supp. 60-1103(b)] "sets forth the provisions for crediting payments to subcontractors against claims of the contractor." See also Kan. Att'y. Gen. Op. No. 85-124 (pursuant to K.S.A. 60-1103[d], owner of residential property is subject to double liability for work done on that property only for amount of payments made to general contractor after receipt of required warning statement, or, if no warning statement is required, for payments made prior to expiration of the 3-month period for filing lien claims). Because the Chartrands were aware of the lien before making any final payments contemporaneous with receiving the deed, the limitation would arguably not apply.

However, we note that the intent of the statute and the outcome may have been modified by the amendments made by the legislation passed during the pendency of *Chartrand I*; the legislation broadened the statute to require notice to equitable owners. Considering the effect of the amendments again raises due process and other questions discussed in *Chartrand II*. We conclude that we need not resolve this morass of issues because even if we accept the Chartrands' interpretation of the statute and substitute the

Chartrands for the word "owner" and Design Build for the term "original contractor," the records does not support the Chartrands' argument.

The limit of $59,169.37 on which the Chartrands rely is found on a spreadsheet of estimated construction costs which was attached to the contract between the Chartrands and Design Build. Gregory Finkle of Design Build testified that Owen Lumber supplied additional items that were not included as part of the Owen Lumber estimate on the spreadsheet.

As the district court noted, there is no evidence in the record of a contract between Design Build and Owen Lumber for a fixed amount or maximum total of $59,169.37. In fact, Robert Maple, Jr., coowner and sales manager of Owen Lumber, testified that the subcontractor had no written contract with Design Build and that Owen Lumber generally supplies the requested lumber and materials and then bills contractors on a monthly basis. The testimony of Finkle also confirmed that Design Build did not have a fixed-sum contract with Owen Lumber for supplying materials for the job; instead, Owen Lumber supplied materials as requested and billed the contractor monthly. According to Finkle, all the requested materials were supplied before the Chartrands obtained legal ownership of the property by a quitclaim deed.

More salient to the Chartrands' argument, however, is the lack of any evidence that the Chartrands contracted to pay no more than the $59,169.37 for materials from Owen Lumber. Rather, the figure was reflected as an "estimate." The Chartrands do not cite to any other evidence in the record of a contractual limitation. Thus, the record does not support the first premise of the Chartrands' argument that their obligation was contractually limited.

Similarly, the second part of the equation—that $54,337.85 should be subtracted from the contract limit—is not supported by the record. The Chartrands contend that Design Build produced cancelled checks totaling the exact $54,337.85 figure, but they fail to cite to any support for this statement in the record. Instead, the record shows that Maple testified that he did not personally total the payments, but he agreed with counsel that $54,000 "sounds about right."

The Chartrands bore the burden to designate a record showing error, and without such a record, the claim of error fails. See *Fletcher v. Nelson*, 253 Kan. 389, 392, 855 P.2d 940 (1993). Albeit for different reasons, we agree with the district court's decision to reject the Chartrands' argument that K.S.A. 60-1103(d) should limit the amount owed on the mechanic's lien. The limitation does not apply under the facts of this case. See *Drake v. Kansas Dept. of Revenue*, 272 Kan. 231, 239, 32 P.3d 705 (2001) (upholding district court's ruling as correct for different reason).

Issue 3: *Did the District Court Err in Awarding Prejudgment Interest?*

Next, the Chartrands argue that the district court erred in awarding prejudgment interest on the mechanic's lien from February 6, 2005, until the date judgment was entered. They contend that the amount owed on the lien was not ascertainable until the district court made its calculations by journal entry on May 10, 2005. This contention lacks merit.

### Standard of Review

The standard of review for allowing prejudgment interest is a matter of judicial discretion subject to reversal only upon a showing of abuse of discretion. *Blair Constr., Inc. v. McBeth*, 273 Kan. 679, 689, 44 P.3d 1244 (2002); *Vernon v. Commerce Financial Corp.*, 32 Kan. App. 2d 506, 511, 85 P.3d 211 (2004).

### General Rules of Law

Prejudgment interest is governed by K.S.A. 16-201. In Kansas, the general rule is that prejudgment interest is allowable on liquidated claims. Interest is also an appropriate remedy when claims are liquidated although subject to setoff or counterclaims. *Phelps Dodge Copper Products Corp. v. Alpha Construction Co.*, 203 Kan. 591, 595-97, 455 P.2d 555 (1969). A claim becomes liquidated when both the amount due and the date on which such amount is due are fixed and certain or when the same become definitely ascertainable by mathematical calculation. *Blair Constr., Inc.*, 273

Kan. at 689; *Miller v. Botwin*, 258 Kan. 108, 119, 899 P.2d 1004 (1995).

The Chartrands' obligation to pay the lien was established in *Chartrand I*, 270 Kan. at 227-28. Now, they argue that because they disputed Owen Lumber's claim and because they asked the district court to limit their liability on the mechanic's lien, the claim was not sufficiently certain and ascertainable on February 5, 1996, the date the Chartrands took ownership of the property by quit-claim deed. This type of argument has been rejected by this court.

In *Crawford v. Prudential Ins. Co.*, 245 Kan. 724, 783 P.2d 900 (1989), an injured worker sued his wife's group health insurer to recover medical expenses. We recognized that controversy will sur-round a claim for damages and interest. Regardless, the fact that a good faith controversy existed as to insurance coverage, which precluded allowance of attorney fees, did not preclude the granting of prejudgment interest where the amount of the prevailing in-sured's claim was liquidated. 245 Kan. at 737. Although the present case involves a different set of facts, it remains true that a good faith controversy involving the liability of the Chartrands (or limi-ting their liability) does not preclude the granting of prejudgment interest on a liquidated claim.

The Chartrands point to the district court's comment that "nei-ther party has provided much help in trying to determine the principal amount actually owed by Design Build Group to Owen Lum-ber." This, however, appears to refer to determining whether there should be any payments set off and to determining whether the amount was principal only without including interest.

As previously observed, Owen Lumber's claim was clearly liq-uidated when the lien statement was filed. Even though there was a dispute as to whether the lien actually reflected the total of the invoices attached to the lien and, ultimately, the district court de-termined that interest reflected on those invoices should not be included in the total, it is not disputed that the amount owed could be ascertained through mathematical calculation. Even the Char-trands, by suggesting the invoices show that the total on the lien was incorrect, indirectly concede that the amount owed by Design Build to Owen Lumber can be ascertained by adding the invoices

and subtracting payments. See *J. Walters Const. Co. v. Greystone South Partnership*, 15 Kan. App. 2d 689, 699, 817 P.2d 201 (1991). Moreover, there was no dispute between Design Build and Owen Lumber that $14,502.97 was due Owen Lumber when the lien statement was filed. Any reduction, set off, or other claim that would reduce the actual payment due the subcontractor arises out of the same "contract or transaction" and, therefore, the claim does not become "unliquidated." See *Phelps Dodge Copper Products Corp.*, 203 Kan. 591, Syl. ¶ 4; *J. Walters Constr. Co.*, 15 Kan. App. 2d at 699. Nor does the dispute regarding liability make the claim unliquidated. See *Crawford*, 245 Kan. at 737.

Therefore, the district court correctly determined that the claim became fixed and liquidated as of the date they became owners of the property, or February 5, 1996. The court did not abuse its discretion in awarding prejudgment interest.

Issue 4: *Were the Chartrands Denied the Opportunity for a Fair Trial Because the Same Attorneys Represented the Plaintiff and Other Defendants in This Multiparty Case?*

Finally, the Chartrands argue that they were denied the opportunity for a fair trial because the same attorneys represented plaintiff Owen Lumber and other defendants in this case, specifically Greg Finkle and John Hart, owners of Design Build. The district court rejected the Chartrands' contention that Owen Lumber acted in collusion with the owners of Design Build and that Owen Lumber, because of "unclean hands," should be equitably estopped from enforcing its mechanic's lien. We agree with the district court's conclusion that the Chartrands failed to meet their burden of proof on this issue.

A party asserting equitable estoppel must show that another party, by acts, representations, admissions, or silence when that other party had a duty to speak, induced the party asserting estoppel to believe certain facts existed. The party asserting estoppel must also show that the party reasonably relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

The district court made the negative finding that the Chartrands did not carry their burden of proving impropriety. An appellate court will not disturb a negative finding absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. *In re Estate of Haneberg*, 270 Kan. 365, 374, 14 P.3d 1088 (2000).

The Chartrands merely make short assertions in their appellate brief without accompanying argument. They note that attorney Charles Weedman of the Crouch, Spangler, and Douglas law firm prepared the mechanic's lien statement. In January 1997, Weedman and Michael Bandre of the same firm filed the petition to enforce the mechanic's lien on behalf of Owen Lumber. Finkle and Hart, owners of Design Build, were two of the named defendants in the lawsuit filed by Owen Lumber. Later, in June 1998, Weedman and Bandre appeared in court and entered their appearances on behalf of Owen Lumber, Hart, and Finkle.

At the 2004 trial, the district court questioned the Chartrands' counsel about the unclean hands/equitable estoppel claim. After hearing counsel's argument, the court summed up the issue as follows:

"THE COURT: Well, your client has the burden of proving unclean hands. So on the unclean hands issue, what you're telling me is [Design Build] cooperated in providing letters that accurately described the debt. There's no evidence as to whether [Design Build] had the money to pay for it. And [Design Build] let the same counsel represent them who also represented the plaintiff.

"[Defense counse]: That's what I'm saying, Judge."

Nowhere do the Chartrands allege that they were somehow duped or prejudiced by the situation involving Weedman's and Bandre's dual representation, nor do they question the lien statement's accuracy. (Although the Chartrands argue the bills attached to the lien total a different number than reflected on the lien statement, they admit that the amount can be ascertained.) It has been established that the Chartrands knew before they purchased the property from Design Build that Owen Lumber had a mechanic's lien on the property. *Chartrand II*, 276 Kan. 218, 73 P.3d 753 (2003).

We cannot conclude that the district court arbitrarily disregarded undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice was present. The district court correctly concluded that the Chartrands failed to meet their burden of proof.

Judgment of the district court is affirmed, and the case is remanded for foreclosing the mechanic's lien and awarding principal and interest as calculated by the district court.

Affirmed and remanded with directions.