NOT DESIGNATED FOR PUBLICATION

No. 113,517

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BYRON T. WIECHMAN,
*Appellant*,

v.

BENCHMARK INSURANCE COMPANY, CLAIMS PROFESSIONALS, INC.,

and

MARK HUDDLESTON,
*Appellees*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING and FAITH A. J. MAUGHAN, judges. Opinion filed May 27, 2016. Affirmed.

*Ron Beal*, of Lenexa, and *Robert D. Wiechman, Jr.*, of Wichita, for appellant.

*J. Franklin Hummer*, of Shawnee Mission, for appellees.

Before STANDRIDGE, P.J., PIERRON, J., and JOHNSON, S.J.

*Per Curiam*: The district court granted Byron T. Wiechman (Byron) summary judgment on his claim that the insurer for tortfeasor Mark Huddleston (Huddleston), Benchmark Insurance Company (Benchmark), and its claims administrator, Consumer Professionals, Inc. (CPI), breached an agreement to settle an underlying tort claim. However, the district court denied Byron prejudgment interest on the amount it awarded

him, and it denied him leave to amend his claims against those parties to add a claim for fraud. Byron appeals from those denials. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 2005, Huddleston negligently failed to yield the right of way to Byron at an intersection. The vehicles they were operating collided, and Byron was injured in the collision. Byron's insurer, State Farm, subsequently paid $7,135.15 in personal injury protection (PIP) benefits for expenses Byron incurred because of his injuries.

Benchmark insured Huddleston. Benchmark's policy limited its liability to any one person injured by Huddleston's negligence to $25,000. Benchmark contracted with CPI to adjust claims made against Benchmark's insureds. State Farm's agent made demand on Huddleston, Benchmark, and CPI for reimbursement of the PIP benefits it had advanced on Byron's behalf. Byron, apparently, advised CPI that Byron's uncle, attorney Robert Wiechman (Wiechman), would be representing him in his personal injury claim. CPI then sent letters to Wiechman attempting to verify his representation and notifying him of the PIP lien State Farm was asserting. On August 11, 2006, Wiechman responded in writing to CPI's correspondence and asked for a log of the PIP benefits State Farm had advanced. CPI supplied Wiechman copies of the paid medical bills documenting State Farm's PIP reimbursement claim. CPI continued its attempts to contact Wiechman, both by mail and by phone, to confirm that he would be handling Byron's personal injury claim and protecting State Farm's PIP lien. CPI did not receive a response.

Neither Wiechman nor anyone else on Byron's behalf filed suit against Huddleston within 18 months after the collision. K.S.A. 40-3113a(c) authorized State Farm to sue Huddleston, independent of any claim Byron might eventually make, for reimbursement of the PIP benefits it had paid once that 18-month period had passed. Having determined

2

that Huddleston was at fault in the collision and liable to State Farm, CPI avoided such a suit by reimbursing, in March 2006, State Farm the $7,135.15 in PIP benefits it had advanced.

On September 27, 2007, the day before the statute of limitations expired, Byron, through Wiechman, sued Huddleston for negligence, alleging damages in excess of $50,000. That suit was filed under case No. 07 CV 3531. In February 2008, Wiechman sent a settlement brochure, which included the bills State Farm had paid, to CPI demanding $85,263.88 to settle Byron's claim. Wiechman and Michele Avery, CPI's adjuster, conferred by phone regarding the policy limits and settlement. On March 12, 2008, Avery sent the following written settlement offer to Wiechman:

> "This is a follow-up to our phone message today wherein we agreed to extend out [*sic*] insured's policy limit of $25,000.00 to you on behalf of your client. We have enclosed a Release of All Claims.
>
> "Upon receipt of the properly executed release, we will issue payment in the amount of $25,000.00 and consider this matter resolved."

The Release of All Claims form Avery transmitted provided that Byron would release Huddleston, Benchmark, CPI, and others from all his claims from the collision of September 28, 2005, "for the sole consideration of Twenty Five Thousand—00-100 ($25,000.00) to the undersigned (payment will be forthcoming) . . . ."

In the months thereafter Wiechman settled Byron's underinsured motorist claim with State Farm for $25,000. Then, on August 26, 2008, Wiechman forwarded the release, duly signed by Byron, to CPI with a cover letter that stated: "In response to your letter dated March 12, 2008 wherein you offered your policy limits of $25,000.00 in order to settle this matter, please be advised that [Byron] hereby accepts that offer."

3

A short time later the district judge who had been assigned case No. 07 CV 3531 notified Wiechman that the case was subject to dismissal for lack of prosecution. Huddleston did not have counsel. On or about September 22, 2008, Wiechman notified the district court that the case had settled.

However, no settlement was ever implemented. According to Wiechman, on September 5, 2008, Avery advised him by voicemail that the check CPI would be sending would be for $17,846.85 which, combined with the $7,153.15 in PIP reimbursement it had previously paid, constituted the $25,000 policy limit settlement. Wiechman informed Avery by phone on September 26, 2008, that the settlement required a separate payment of $25,000. CPI's file showed that Wiechman told Avery he would accept no check for less than $25,000, and he intended to file a lawsuit to enforce the settlement agreement.

In spite of these known disputes as to the terms of the settlement, Wiechman did not attempt to have the case removed from the district court's dismissal docket. The district court dismissed Byron's suit against Huddleston in case No. 07 CV 3531 "for lack of prosecution" on December 16, 2008.

On February 26, 2009, J. Franklin Hummer, CPI's newly obtained attorney for, it appears, Huddleston, Benchmark, and CPI, sent Wiechman a letter. In it Hummer requested that Wiechman "hold off [on] filing [a law]suit against anyone" until Hummer had a chance to review the file. In March 2009, Hummer advised Wiechman that "it appear[ed] to [him] as if the only amount owed [was] the $17,846.85," as "[t]he entire policy limit is $25,000" and CPI "was well within its rights to pay the PIP subrogation claim." Hummer pointed out that CPI attempted, on numerous occasions, to speak with Wiechman or Byron about the PIP lien but its adjusters received no response.

Approximately 4 years later, on March 8, 2013, Byron filed the instant action for breach of the settlement agreement, under case No. 13 CV 0731, against Benchmark,

4

CPI, and Huddleston (the defendants). He alleged that the defendants owed him a separate payment of $25,000 under their settlement agreement. Wiechman subsequently explained at his deposition why it took so long for the contract action to be filed:

> "I knew there was a possibility that I may be a witness in this case, and my attorney of choice and my client's attorney of choice was one guy and that was Ron Beal. Mr. Beal was involved in a major malpractice suit in an El Dorado court, Butler County court suing a Kansas [C]ity law firm, and he advised me that he was unable to take the case and it wasn't until March of this year that he was free to take this case."

When asked if there was any other reason for the delay, Wiechman replied, "That's it. We wanted Mr. Beal."

That same day, March 8, 2013, Wiechman filed a motion to set aside the order of dismissal in case No. 07 CV 3531 contending that he had been misled by CPI into allowing the dismissal. Because CPI had refused to issue a check for the $25,000 CPI promised, he argued that Byron's case should be reinstated. The district court, over the objections Hummer advanced for Huddleston, found good cause, set aside the dismissal, and reinstated the case. Huddleston appealed. A panel of this court dismissed that appeal in *Wiechman v. Huddleston*, No. 110,656, 2014 WL 4996205, (Kan. App. 2014) (unpublished opinion), *rev. granted* 302 Kan. __ (October 7, 2015), finding that it had no appellate jurisdiction because the interlocutory appeal was not filed in accordance with K.S.A. 2015 Supp. 60-2102(c). That decision recently was affirmed by our Supreme Court in *Wiechman v. Huddleston*, No. 110,656, __ Kan. __, __ P.3d __ (April 15, 2016). Thus, once the mandate in that appeal has been issued, 07 CV 3531 would again be a pending case in the district court.

While the appeal in 07 CV 3531 moved along on its separate track, the breach of contract action at issue here, 13 CV 0731, proceeded through district court. On July 30, 2013, Byron moved to amend his breach of contract petition to include a claim of fraud.

5

Avery, who had negotiated the settlement with Wiechman, left CPI in 2011. Her whereabouts were unknown. Byron deposed Leonard Gragson, the president of CPI, on July 10, 2013. Gragson testified concerning the contents of CPI's claims file. Byron argued in his motion to amend that, during the deposition, Gragson made several statements which proved that CPI never intended to pay him more than an additional $17,846.85 to settle Byron's tort action. Byron's motion asserted that CPI intentionally made false and misleading representations that it would pay Byron $25,000 in order to induce him to sign the Release of All Claims form. Byron claimed that he sustained damages due to CPI's fraud, as, "[b]ut for the fraud, [he] likely would have retained [his] claim[s in the underlying tort action] and recovered damages . . . against . . . Huddleston in an amount not less than $85,263.88."

Among other arguments, the defendants countered that it was inappropriate to allow Byron to amend his petition to include fraud because such an amendment would be futile. The defendants contended that in order to prevail on an action for fraud, Byron needed to prove that he had been damaged as a result of the alleged fraud. The defendants maintained that Byron could not make a showing of damages because the underlying tort claim was still pending and Huddleston could never rely on the release to defeat that claim as no consideration for it had ever been paid.

After holding a hearing on the motion to amend and taking the matter under advisement, the district court announced its ruling on August 14, 2013. While acknowledging that amendments to pleadings were, generally, to be permitted under K.S.A. 60-215, the district court pointed out that there were exceptions to that general rule. The district court, relying on *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 1002, 667 P.2d 879 (1983), determined that the futility of an amendment was a recognized exception justifying the denial of a motion to amend. The district court then denied Byron's motion on the basis of futility. The district judge explained that Byron had not suffered damages from any fraud, and would only incur such damages if, at some

6

future time, Huddleston successfully interposed the release to defeat Byron's tort damage claim. The district court subsequently denied Byron's motion for reconsideration.

Prior to trial, the parties filed competing summary judgment motions. The central issue, obviously, was whether the $25,000 policy limit settlement CPI offered included or was in addition to CPI's PIP lien reimbursement. More specifically, Byron contended that summary judgment should be granted in his favor because CPI made a clear and unequivocal written offer to settle for a $25,000 payment, making no mention of the PIP reimbursement it had previously made. The defendants countered that a trial was required to determine the credibility of parol evidence on the meaning of the settlement offer (Avery's file noted that, prior to offering the policy limits, she and Wiechman had discussed that CPI's PIP lien satisfaction caused a reduction in the funds available to Byron under the policy's limit; Wiechman denied that they ever had such discussions). CPI argued that the evidence demonstrated that when Avery offered the insured's "policy limit of $25,000" and Byron accepted a policy limits settlement both parties knew or should have known that this sum included the monies that had already been paid to State Farm.

The district court rejected the defendants' assertion that conflicts between Wiechman's testimony and Avery's claim file demonstrated the existence of disputed material facts precluding summary judgment. The district court avoided a credibility determination, ruling that any preliminary discussions between Wiechman and Avery were beside the point. It determined that the rules of contract construction required that it look only within the four corners of Avery's settlement offer letter because, when Byron accepted the offer, the letter became the contract.

The district court held that Byron was entitled to summary judgment because the parties entered into a binding settlement agreement. That agreement obligated the

7

defendants to make a "future" payment to Byron of $25,000 in addition to any PIP lien reimbursement. The district judge explained:

> "[T]he written language of the settlement agreement reached by the parties in this case is clear and is not susceptible to two or more meanings. Neither the settlement offer in the March 12, 2008 letter from Defendant CPI to [Byron]'s counsel, nor the release that accompanied the letter make any mention of the prior payment of the PIP lien. Nor is there any language that would remotely suggest that Defendants CPI and Benchmark would set off the previously paid PIP lien from the promised future payment of $25,000.00. Defendants CPI and Benchmark are attempting to use parol evidence to create ambiguity in the written agreement where none exists on the face of the agreement.
>
> "The uncontroverted evidence reflects that [Byron] and Defendants Benchmark and CPI entered into a binding settlement agreement in which these Defendants promised to pay [Byron] $25,000.00, exclusive of any prior PIP lien payment, in exchange for [Byron]'s release of all claims."

The district court, however, then found that although the parties entered into a binding settlement agreement, Byron was not entitled to receive prejudgment interest. Specifically, the court determined that it was not appropriate to award Byron interest under K.S.A. 16-201 because Byron's claim was not liquidated, as "the dispute between the parties was whether the terms of the settlement required *future* [*sic*] payment to [Byron] of $25,000.00 or $17,846.85. Until this dispute between the parties was adjudicated, the amount due was not fixed and certain."

Byron subsequently filed this timely appeal from the district court's denial of prejudgment interest under K.S.A. 16-201 and its prior denial of Byron's motion to amend the petition in case No. 13 CV 0713 to include a count of fraud. The defendants filed but abandoned a cross appeal.

8

We consider the points Byron argues on appeal in the order he briefed them.

*The district court did not err when it denied Byron prejudgment interest*

Byron contends that the district court erred when it refused to award him prejudgment interest under K.S.A. 16-201. K.S.A. 16-201, which governs prejudgment interest, provides, in the pertinent parts Byron relies on, as follows: "Creditors shall be allowed to receive interest at the rate of ten percent per annum . . . , for any money after it becomes due; for money lent or money due on settlement of account, from the day of liquidating the account and ascertaining the balance . . . ."

K.S.A. 16-201 generally allows prejudgment interest on liquidated claims. A claim is liquidated when "both the amount due and the date on which such amount is due are fixed and certain." *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 925-26, 157 P.3d 1109 (2007). The existence of a good-faith controversy regarding whether a party is liable for the money, however, does not preclude the district court from awarding prejudgment interest under K.S.A. 16-201. *Blair Constr., Inc. v. McBeth*, 273 Kan. 679, 689, 44 P.3d 1244 (2002).

Byron urges us to apply de novo review because this case was decided on summary judgment. However, the decision whether to award prejudgment interest under K.S.A. 16-201 is a matter of judicial discretion subject to reversal only upon a showing of an abuse of that discretion. See *Chartrand*, 283 Kan. at 925; *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 22, 44, 59 P.3d 1003 (2002) (applying abuse of discretion standard in summary judgment proceeding). Nevertheless, a judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK*

*Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). Thus, regardless of which standard of review we employ, we must determine whether the district court properly applied K.S.A. 16-201 when it denied Byron prejudgment interest.

The parties appropriately focus their arguments on the issue of whether the amount due was liquidated. Byron claims that despite the defendants' purported inability to "understand the terms they drafted," the clear and unambiguous settlement agreement evidenced a specific amount of indebtedness and, thus, the amount due was clearly liquidated. Byron claims that the district court's finding that the writings comprising the parties' settlement agreement were unambiguous as to the promised future payment of $25,000 contradicts its prejudgment interest determination that the claim was not liquidated because the amount due was not fixed and certain. Byron further complains that the "supposed dispute [over the amount owed] was manufactured by the Insurance Companies" and defendants should not be allowed to defeat a claim for prejudgment interest by raising such a challenge.

Defendants, not surprisingly, argue that we should affirm the district court's decision because Byron was not entitled to prejudgment interest.

We agree with the district court that Byron's claim was not liquidated "[u]ntil this dispute between the parties was adjudicated." We have reviewed the legion of cases cited to us by each party regarding the application of K.S.A. 16-201. We have found no case with facts that are even remotely similar. Here, the district court was required to determine, as a threshold matter, whether the parties had even made a settlement agreement in the first place. The court could have found that there was no meeting of the minds, and no agreement, that CPI was obligating itself to pay more than the $25,000 it could be required to pay had the tort claim gone to judgment after CPI offered a policy limits settlement. Likewise, the district court could have found that there was an agreement, but it was a policy limit agreement restricted to a total of $25,000.

10

The agreement Byron successfully urged on the district court actually bound the defendants to a settlement that required them to pay a total of $32,153.15. Such a reading required the court to ignore the term in the settlement offer that provided: "This is a follow-up to our phone message today wherein we agreed to extend out [*sic*] insured's policy limit of $25,000.00 to you on behalf of your client." The offer did not state that it was for $32,153.15, Wiechman's letter accepting the offer merely accepted the $25,000 "policy limits" offer, and the release did not require that Byron acknowledge receipt of $32,153.15. Rather, Byron's version of the agreement required the district court to isolate and exalt a different sentence from that same offer letter: "Upon receipt of the properly executed release, we will issue payment in the amount of $25,000.00 and consider this matter resolved."

The fact that Byron persuaded the district court to accept his proposition does not automatically make the claim liquidated. The district court, on the unusual facts here, correctly held that Byron's claim was not liquidated as to amount until the court determined that, first, there was in fact a settlement agreement and that, second, under that agreement, the defendants were required to pay Byron an additional $25,000 over and above the PIP reimbursement.

We further note that, to be liquidated, both the amount due and the date on which such amount is due must be fixed and certain. Even if we were inclined to find that the amount due was adequately fixed and certain to be "liquidated," the date on which the amount is due must also be fixed and certain. The district court recognized that each aspect, *i.e.*, amount due and date due, was required to be demonstrated for a claim to be liquidated, citing, as we have above, *Chartrand*, 283 Kan. at 925. The district court repeatedly recognized that no due date was set out in the offer letter from CPI's adjuster or in its release. As the district court pointed out, with its own emphasis, "the settlement required *future* [*sic*] payment" regardless of what amount was ultimately determined to be due. The date on which the payment was due was not fixed and certain.

11

We reject Byron's assertion that the district court erred in applying K.S.A. 16-201 when it denied prejudgment interest on the amount it awarded.

We are not persuaded that the district court abused its discretion, on the unique facts of this case, when it determined that K.S.A. 16-201 did not require a grant of prejudgment interest on the amount it ultimately awarded.

*The district court correctly denied Byron's motion to include a claim of fraud*

Citing *Ware v. State Farm Mutual Automobile Ins. Co.*, 181 Kan. 291, 311 P.2d 316 (1957), Byron contends that the district court erred when it denied his request to amend his petition to assert a fraud claim against CPI. He argues that such an amendment was not futile, as damages are immediate when a claimant is fraudulently induced by an insurance company to sign a release and waive a valuable right, *i.e.*, the right to sue the tortfeasor.

*Ware* is clearly distinguishable, but a detailed analysis of Byron's *Ware* argument is not necessary. This issue is moot. An issue is moot where the controversy between the parties no longer exists, any judgment of the court would be ineffective, and it would not impact any of the parties' rights. *State v. Montgomery*, 295 Kan. 837, 840-41, 286 P.3d 866 (2012). Here, Byron has ultimately received exactly what he claimed he bargained for during the settlement negotiations: the district court granted him summary judgment for the settlement amount he said he was due. The release he executed, which he claims CPI fraudulently induced, is superfluous because the underlying tort case has, as a practical matter, been resolved by the district court's summary judgment in this case. See *Dana v. Heartland Management Co.*, 48 Kan. App. 2d 1048, 1070, 301 P.3d 772 (2013); *Bezona v. Tomson*, 25 Kan. App. 2d 210, 214, 960 P.2d 252 (1998).

Affirmed.

12