NOT DESIGNATED FOR PUBLICATION

No. 122,119

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ABDUL AZIZ,
*Appellant*,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES,
*Appellee*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed November 6, 2020. Affirmed.

*James C. Heathman*, of Heathman Law Office PA, of Topeka, for appellant.

*LeAnn M. Cochran*, of Kansas Department for Children and Families, for appellee.


Before GARDNER, P.J., BUSER and BRUNS, JJ.


PER CURIAM: In this case, Abdul Aziz appeals the district court's decision affirming the final order of the Kansas Department for Children and Families (DCF) substantiating sexual abuse of a minor child and directing his name be entered on the Child Abuse and Neglect Registry. On appeal, Aziz contends that the district court erred because DCF's determination was not supported by substantial evidence and was arbitrary and capricious. However, based on our review of the record, we find the decisions below to be supported by substantial evidence that is both clear and convincing. Likewise, we do not find them to be either arbitrary or capricious. Thus, we conclude that the district court did not err in affirming DCF's final order and we affirm.

1

In 2014, D.C.—who was in eighth grade at the time—confided to a friend that Aziz had inappropriately touched her in a sexual manner in the past. At the time, Aziz was married to D.C.'s sister. The friend told her mother what D.C. had said and her mother, in turn, told her older brother. On May 15, 2014, D.C.'s brother and another family member took her to the Topeka Police Department where D.C. reported that she was sexually abused while she was living with Aziz and his wife, during her fourth-grade year. D.C. told the police that she had not previously told anyone about the abuse because she was afraid that her sister—Aziz' wife—would be upset with her.

After D.C. made her police report, the matter was also reported to DCF. Subsequently, DCF and the Topeka Police Department conducted a joint investigation. On June 16, 2014, D.C. spoke with a DCF Social Worker as part of a "Safe Talk" forensic interview. During the interview, D.C. repeated her allegations against Aziz and identified three specific locations where the abuse occurred when she was in 4th grade, 6th grade, and 7th grade.

On January 14, 2016, an investigator with DCF interviewed Aziz. He denied any inappropriate touching of D.C. About two months later, DCF issued a Notice of Department Findings in which the agency found D.C.'s allegation of sexual abuse against Aziz to be substantiated. In the Notice, DCF noted that D.C. had "provided consistent statements to individuals about the facts and circumstances of the abuse." Thereafter, Aziz appealed DCF's decision.

On October 4, 2017, an Administrative Law Judge (ALJ) convened a hearing at which D.C. testified regarding the allegations of sexual abuse committed by Aziz. In addition, D.C.'s brother testified regarding what D.C. had told him and indicated that she

never recanted her allegations to him. Also, two social workers and a law enforcement officer testified regarding their investigations of the allegations.

Aziz testified in his own defense and denied inappropriately touching D.C. His wife—who is D.C.'s sister—also testified at the hearing. Additionally, both parties submitted exhibits that were admitted into evidence. Further, the ALJ reviewed D.C.'s recorded "Safe Talk" interview and noted that "there does not appear to be any evidence of leading questions or any attempts to coach D.C. in any way during her interviews."

On December 26, 2017, the ALJ issued an Initial Order affirming DCF's substantiation of sexual abuse. In particular, the ALJ found that "DCF has demonstrated by clear and convincing evidence that [Aziz] sexually abused D.C. as that term is defined in the applicable Kansas statutes and administrative regulations." Subsequently, Aziz appealed the ALJ's Initial Order to the State Appeals Committee. On appeal, the State Appeals Committee affirmed the ALJ's Initial Order. In its Final Order, the State Appeals Committee expressly adopted the ALJ's findings of fact and conclusions of law.

Next, Aziz timely filed a petition for judicial review in the Shawnee County district court. On August 16, 2019, the district court issued a 16-page Memorandum Decision and Order in which it affirmed the Final Order issued by the State Appeals Committee. Specifically, the district court concluded that the record "contains substantial evidence when viewed in light of the record as a whole supporting the finding by DCF that sexual abuse of D.C. by Abdul Aziz was substantiated by clear and convincing evidence." The district court further found that the final order was not "unreasonable, arbitrary, or capricious."

Thereafter, Aziz timely appealed to this court.

3

ANALYSIS

On appeal, Aziz contends that the district court erred in affirming DCF's final order substantiating that he had sexually abused D.C. Specifically, Aziz argues that DCF's determination was not supported by substantial evidence. In addition, he argues that DCF's determination was arbitrary and capricious. However, based on our review of the record on appeal, we find that the final order of DCF was supported by substantial evidence that was both clear and convincing. Likewise, we find DCF's final order to be reasonable and not arbitrary or capricious.

The Kansas Judicial Review Act (KJRA) governs appellate review of a state agency's decision. K.S.A. 77-601 et seq. Under the KJRA, judicial review of an administrative action is limited to determining whether the political subdivision acted within the scope of its authority, whether the decision was substantially supported by evidence, or whether the decision was fraudulent, arbitrary, or capricious. See *Friends of Bethany Place, Inc. v. City of Topeka*, 297 Kan. 1112, 1129, 307 P.3d 1255 (2013). On appeal, the burden of proving the invalidity of the agency action rests on the party—in this case Aziz—asserting such invalidity. See K.S.A. 77-621(a)(1); see also *Frick Farm Properties v. Kansas Department of Agriculture*, 289 Kan. 690, 703-04, 216 P.3d 170 (2009).

K.S.A. 2014 Supp. 38-2226 required DCF to investigate reports of child abuse or neglect in Kansas. Moreover, DCF must determine whether the allegations in a particular report are substantiated and, if so, take appropriate action to protect the child. Here, the allegation against Aziz involves an allegation of sexual abuse, which is defined as "any contact or interaction with a child in which the child is being used for the sexual stimulation of the perpetrator, the child or another person." K.S.A. 2014 Supp. 38-2202(dd); see K.A.R. 30-46-10(i)(2014 Supp.). It is undisputed that at the time of the investigation in this case, Kansas law required a finding by "clear and convincing

4

evidence" in order to substantiate an allegation of sexual abuse. See K.A.R. 30-46-10(j) (2014 Supp.); See also *Rajanna v. Kansas Depart. of Social and Rehabilitation Services*, No. 104,922, 2011 WL 5027113, at *5-6 (Kan. App. 2011) (unpublished opinion) (whether abuse occurred determined by the regulations in effect at the time of the alleged abuse). Clear and convincing evidence is that which shows the truth of an alleged fact to be highly probable. See *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

In an administrative hearing, the ALJ serves as the trier of fact and has the responsibility to make credibility determinations. K.S.A. 77-621(d). The ultimate determination as to the credibility or veracity of a witness rests with the trier of fact. See *State v. King*, 288 Kan. 333, 352, 204 P.3d 585 (2009). Further, when rendering a final agency decision, the ALJ's credibility determinations are entitled to deference by the State's agency head. See K.S.A. 77-527(d).

In this appeal, we must determine whether findings below are supported by substantial evidence in light of the record as a whole, including evidence that both supports and detracts from the agency's finding. See K.S.A. 77-621(c)(7); see also *Sierra Club v. Moser*, 298 Kan. 22, 62-63, 310 P.3d 360 (2013). "Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion." *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 916, 157 P.3d 1109 (2007). We also must determine if the action taken below was arbitrary or capricious. "An agency action is arbitrary or capricious if it is unreasonable or without foundation in fact." *Wright v. Kansas State Board of Education*, 46 Kan. App. 2d 1046, 1059, 268 P.3d 1231 (2012).

Here, the ALJ found "D.C. to be a very credible witness." Notably, the ALJ pointed out that D.C.'s "mannerisms and eye contact at the hearing contribute to her credibility." In addition, the ALJ found that D.C.—who was no longer a minor at the time of the administrative hearing—"appeared very calm and collected throughout her

5

testimony." The ALJ further found that the accounts given by D.C. during her interviews "were substantially consistent in the salient points across the various tellings."

Although the ALJ also noted that D.C. recanted her allegations at one point during the investigation, the ALJ found that Aziz' wife—D.C.'s sister—had pressured her into doing so. The ALJ also found the sister was not "a particularly credible witness" and that she "pestered D.C. about recanting her allegations of abuse." The ALJ further found an inconsistency in the sister's testimony to be significant. In particular, the ALJ found that, while the sister testified "it was D.C. who approached her about recanting . . . , the text messages DCF placed into evidence between the two tell a different story." As a result of this contradiction, the ALJ concluded that the sister's "veracity" was in doubt.

Likewise, the ALJ did "not find [Aziz'] denial to be . . . particularly credible." Specifically, the ALJ noted Aziz remained "expressionless" throughout the hearing. Moreover, the ALJ found that, "while [Aziz] categorically denied sexually abusing D.C. in any way at the hearing," he had told a police detective during an interview that "there was a time that D.C. was exposed" and that he "may have [touched her] accidently." In weighing the evidence, the ALJ found the discrepancy to constitute "a significant difference in accounts."

Similar to the ALJ, the State Appeals Committee, and the district court, we also find it to be significant that D.C.'s allegations of sexual abuse by Aziz were consistent in her various statements, interviews, and testimony. In particular, we note that DCF initially substantiated the sexual abuse allegations because D.C. "provided consistent statements to individuals about the facts and circumstances of the abuse." Subsequently, after hearing the evidence presented at the hearing, the ALJ also found D.C.'s testimony to be "substantially consistent" with the various accounts that she had previously given to the investigators.

6

In turn, the State Appeals Committee found the ALJ's explanation regarding the credibility of the witnesses to be "detailed, perception-based, and rational." Likewise, the State Appeals Committee found that "the findings of fact and the exhibits submitted by DCF all combine to provide the necessary factual support for the agency's [substantiated] finding." As a result, the State Appeals Committee concluded that DCF "demonstrated, by clear and convincing evidence, that [Aziz] sexually abused D.C. as that term is defined in the applicable Kansas statutes and administrative regulations."

On judicial review, the district court also noted the consistency of D.C.'s statements during the investigation and hearing process. Specifically, the district court found:

> "Contrary to Mr. Aziz's assertion on appeal, it was not unreasonable for the ALJ to view testimony in the record as corroborating D.C.'s accounts of abuse. D.C. provided several consistent statements about what had happened to her. [On] or about the date of the report to authorities in May 2014, D.C. spoke about the sexual abuse to her girlfriend [], her brother [], police officers and detectives, DCF investigative social worker Kaitlyn Staab, and DCF forensic interviewer Ann Goodall. Then, several years later, D.C. appeared at the appeal hearing in October 2017, when she was then 18 years old, and testified under oath that Mr. Aziz put his hand down her pants and touched her vagina, and there were times his fingers would go inside her vagina."

As indicated above, it is not our role to reweigh the evidence. Moreover, despite Aziz' argument to the contrary, we do not find the lack of corroborating witnesses in this case to undercut the ALJ's findings. Due to the nature of sexual abuse of a child, it is not unusual for these types of acts to be performed outside the presence of others. See Note, *The Sexually Abused Infant Hearsay Exception: A Constitutional Analysis*, 8 J. Juv. L. 59, 59-60 (1984). Furthermore, the testimony of a victim of sexual abuse can be sufficient in itself—if believed by the trier of fact—to support the substantiation. *See*,

e.g., *State v. Coburn*, 38 Kan. App. 2d 1036, 1066-67, 176 P.3d 203 (2008) (discussing such cases as turning on the credibility of the victims).

Also, we do not find Aziz' argument that DCF and the police department failed to adequately investigate the allegations against him to be persuasive. Specifically, Aziz argues that DCF failed to investigate potential motivations for D.C. to lie about the allegations against him. However, Aziz testified at the hearing regarding not liking D.C.'s friends or her lifestyle. He also testified that he banned one of her closest friends from his house as a result. Nevertheless, in weighing the evidence, the ALJ was not persuaded by Aziz' testimony and, as indicated above, questioned his credibility. Again, it is not our role to replace our judgment regarding the credibility of a witness for that of the trier of fact.

Although it is possible that others may have weighed the evidence differently than the ALJ did, we find that the determinations made are supported by substantial evidence when the record is viewed as a whole. A review of the record reveals that the ALJ determined the testimony of D.C.—as well as the other witnesses presented by DCF—to be more credible than the testimony presented by Aziz and his wife. We find nothing in the record to suggest that the ALJ failed to properly discharge his responsibilities in making credibility determinations or in weighing the conflicting evidence.

In sum, based on our review of the record as a whole—including the testimony of the witnesses and the exhibits admitted into evidence—we conclude that the ALJ's findings and conclusions are supported by substantial evidence. Likewise, we find that this evidence was sufficient to support DCF's substantiation of the sexual abuse allegations against Aziz by clear and convincing evidence. Finally, we conclude that the ALJ's findings and conclusions were neither arbitrary nor capricious.

Affirmed.

8